## AGOSTINI BROS. BLDG. CORPORATION et al. v. UNITED STATES on Behalf of and For Use of VIRGINIA–CAROLINA ELECTRICAL WORKS, Inc.

No. 5224.

Circuit Court of Appeals, Fourth Circuit.

June 2, 1944.

John Joseph Baecher, of Norfolk, Va. (Earl W. White, of Norfolk, Va., on the brief), for appellants.

R. Arthur Jett, of Norfolk, Va., for appellee.

Before PARKER, DOBIE, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order refusing to stay proceedings pursuant to section 3 of the Federal Arbitration Act, 9 U.S. C.A. § 3. Action had been instituted under the Miller Act, 40 U.S.C.A. §§ 270a–270d, by a subcontractor against a contractor and the surety on the latter's bond to recover for labor and materials furnished in the construction of a government building. Motion was made by the defendants therein to stay proceedings until arbitration could be had pursuant to the terms of the contract between the parties, which provided for the arbitration of all controver-

sies. The stay was denied by the District Judge on the ground that, since the contract was not one involving maritime transactions or transactions within commerce as defined in the Arbitration Act, stay of proceedings was not authorized by that act. The defendants have appealed from the order denying the stay, which has been held to be appealable. Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583.

Section 3 of the Federal Arbitration Act, 9 U.S.C.A. § 3, under which stay was asked is as follows: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

There can be no question that, under language of this section, defendants were entitled to the stay asked. The court below was of opinion, however, that the broad and general language used should be held to be limited to the class of cases in which Congress had legislated as to the validity of arbitration agreements by Section 2 of the Act, 9 U.S.C.A. § 2, which provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

■ We see no reason to thus limit the plain meaning of the general language used in section 3. Congress gave its approval to the principle of arbitration by the enactment of the statute (Shanferoke v. Westchester Service Corp., supra, 293 U.S. 449, 453, 55 S.Ct. 313, 79 L.Ed. 583) ; and it manifestly intended to exercise its full power in furtherance of the principle. The statute was

entitled "An Act to make valid and enforceable written provisions and agreements for arbitration of disputes arising out of contracts, maritime transactions, or commerce among the States or Territories or with foreign nations." 43 Stat. 883, 9 U.S.C.A. § 1–15. As introduced into Congress, section 2 of the act provided for the validity and enforceability of arbitration agreements "in any contract or maritime transaction or transaction involving commerce." The Senate Committee struck the word "contract" from the section and rewrote the language in its present form, so as to cover only maritime transactions and transactions involving interstate and foreign commerce. Senate Report No. 536, 68th Cong.; Zip Mfg. Co. v. Pep Mfg. Co., D.C., 44 F.2d 184. This was evidently done because it was realized that Congress had no power to legislate with respect to the validity of contracts generally but only as to the validity of those which related to matters subject to its control.

 There could be no question, however, as to the power of Congress to exercise the full power attempted by section 3 of the act. Its power to regulate the procedure of the lower federal courts, and even to limit their jurisdiction was well established; and there was no reason why it should not provide in furtherance of arbitration, which it was seeking to promote, that, where arbitration was provided for by a contract in suit, proceedings in such courts should be stayed until arbitration should be had pursuant to the contract. The power exercised by Congress in section 3 was in no respect dependent upon that exercised in section 2; there was no ambiguity in the language employed in section 3; and there was no reason that we can apprehend why the language used should not be given its normal and ordinary meaning or why it should be held limited by the provisions of section 2, where Congress was exercising a limited power. If it had been intended that the stay provided by section 3 should be limited to the cases where Congress had legislated with respect to the validity of contracts, it would have been easy enough to say so.

There have been a number of District Court decisions in accord with that of the learned judge below to the effect that the duty of the court to stay proceedings under this section is limited to the contracts and transactions declared valid by section 2. See Zip Mfg. Co. v. Pep Mfg. Co., supra; In re Cold Metal Process Co., 9 F.Supp. 992; Donahue v. Susquehanna Collieries Co. 49 F.Supp. 843. The case last cited was reversed, however, by the Circuit Court of Appeals of the Third Circuit in Donahue v. Susquehanna Collieries Co., 3 Cir., 138 F.2d 3, 5, after a thorough examination of the questions involved; and we concur both in the conclusion reached by that court and in the reasoning of the clear and incisive opinion of Judge Goodrich, wherein he says:

"The title of the Act suggests, though of course it does not compel, the conclusion that the provisions of the statute are applicable to three kinds of things: (1) Contracts, (2) maritime transactions and (3) commerce, interstate and foreign. The first section defines maritime transactions and commerce. Then the second section proceeds to lay down a rule of substantive law regarding the validity of an agreement for arbitration in case of any maritime transaction or a contract evidencing a transaction involving commerce. Congress was here making a rule concerning subject matter within its own constitutional legislative authority. It was not seeking to confer validity to arbitration agreements generally, a matter outside the scope of federal powers. Instead it picked out two important classes of transactions within the federal legislative domain and declared the effect of arbitration clauses in agreements concerned therewith.

"Then in § 3 the statute deals with the conduct of suits in federal courts, again a subject matter of congressional power. The language becomes general: 'any suit or proceeding', upon 'any issue referable to arbitration under an agreement in writing for such arbitration' are the words. Congress is not limited, in legislating as to law suits in federal courts, to those suits involving matters where the substantive rights of the parties may be controlled by federal legislation. The generality of the language used in the statute does not suggest any self-imposed limitation. Nor do we think that the 'congressional approval of arbitration' should be so limited by implication, by a grudging type of construction carried down from the days of judicial hostility to all arbitration agreements. We think it clear that the provisions of § 3 are not to be limited to the specific instances dealt with in § 2. * * * As indicated above, we think the Act is entitled to a construction which will accomplish its pur-

pose, and should not be hedged about with imagined limitations, as has been done in some instances."

To like effect is what was said by Judge Learned Hand in Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 2 Cir., 70 F.2d 297, 298. That case involved a contract providing for arbitration to be enforced by a state court, and consequently not enforceable by a federal court under Section 4 of the Federal Arbitration Act. It was argued that the power to stay under section 3 was no broader than the power to enforce under section 4. In denying this contention, Judge Hand said: "We can see no reason for a limited construction, and conclude that section 3 authorizes a stay even though the arbitration must take place beyond the jurisdiction of the court. In The Volsinio, supra, D.C., 32 F.2d 357, the actual ruling was that although this was true, the section was inapplicable, unless the contract was itself 'maritime,' or 'involved commerce,' as defined by section 1 of the act (9 U.S.C.A. § 1). We are not clear that this is true; section 2 defines those contracts which it makes 'valid, irrevocable and enforceable,' and no doubt such alone are within section 4. Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004. But it does not follow that section 3 is so circumscribed; the language is: 'If any suit * * * be brought * * * upon any issue referable to arbitration under an agreement * * * for such arbitration.' 'Such arbitration' may very well refer back to 'any issue referable to arbitration,' and not to section 2. The change in language from section 5 of the New York Arbitration Act, from which, in general, section 3 of the federal act was copied, was plainly deliberate. In the New York act the clause had read, 'under a contract * * * described in section two,' and section 2 of that act was the analogue of section 2 of the federal act (9 U.S.C.A. § 2). 'Such arbitration' was very awkward as an equivalent for all that is comprised in section 2 of the federal act, and suggests a broader intent."

The decision of the Second Circuit staying proceedings in the Shanferoke case was affirmed by the Supreme Court (293 U.S. 449, 452, 55 S.Ct. 313, 315, 79 L.Ed. 583), the court saying: "Section 3 of the United States Arbitration Act * * * provides broadly that the court may 'stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.' We think the Court of Appeals was clearly right in concluding that there is no reason to imply that the power to grant a stay is conditioned upon the existence of power to compel arbitration in accordance with section 4 of the act * * *." If the general provisions of section 3 are not limited by section 4, there is no reason for holding that they are limited by section 2.

For the reasons stated, the order appealed from will be reversed and the cause will be remanded for further proceedings not inconsistent with this opinion.

Reversed.