## INTERNATIONAL UNION UNITED FURNITURE WORKERS OF AMERICA et al. v. COLONIAL HARDWOOD FLOORING CO., Inc. (UNITED STATES, Intervener).

### No. 5750.

Circuit Court of Appeals, Fourth Circuit.
Argued April 13, 1948.
Decided May 3, 1948.

34

See also, D.C., 76 F.Supp. 493.

Harry Weinstock, of New York City (Jacob J. Edelman and Isidor Roman, both of Baltimore, Md., and Weinstock & Tauber, of New York City, on the brief), for appellants.

Charles Edward Rhetts, of Washington, D. C. (Gerard D. Reilly, of Washington, D. C., and Earle K. Shawe, of Baltimore, Md., on the brief), for appellee Colonial Hardwood Flooring Co., Inc.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order refusing to stay proceedings in a suit by an employer against a labor union and its local organization under sections 301 and 303 of the Labor Management Relations Act of 1947, 29 U.S.C.A. §§ 185, 187, to recover damages on account of a strike, in violation of the provisions of a contract, and a secondary boycott. The defendants moved for a stay of proceedings pursuant to section 3 of the United States Arbitration Act, 9 U.S.C.A. § 3, on the ground that the contract upon which suit was instituted provided for arbitration of the matters in suit. The District Court denied the stay, holding that the contract did not provide for arbi-

tration of these matters and that the United States Arbitration Act had no application because of the exclusion clause contained in the first paragraph thereof. The defendants have appealed from this order; and we think it clear that the denial of stay in such case is, in effect, the denial of an interlocutory injunction, from which immediate appeal lies to this court. Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; Enelow v. N. Y. Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440.

The contract sued on is a trade agreement relating to wages, hours and conditions of employment and providing the terms under which the parties shall proceed during the twelve months period covered by the agreement, Article IV of the contract is entitled "Grievance Procedure" and consists of seven sections. Section 1 thereof provides for a steward to represent management for each department and a plant committee of three members. Section 2, consisting of subsections lettered from (a) to (1), provides a step by step procedure for the settlement of disputes presented by employees or groups of employees to the stewards, and for reference, if necessary, to the plant committeeman, the superintendent, the plant committee, the general manager, officers of the local union and the international union, with final reference to arbitration if settlement is not reached by the grievance procedure, and with the agreement that there shall be no strikes or lockouts but that the grievance provided in the article shall be the only method for settling disputes "which are the subject of this agreement", with the further provision that any matter pertaining to a general increase of wages shall not be subject to the grievance or arbitration provision. The remaining sections of the article, five in number, relate to the machinery of the grievance procedure, providing for conferences between the plant committee and the general manager, for the prompt answer in writing of grievances presented in writing, for the right of the president of the local union to accompany the plant committeeman in conferences concerning grievances, for the right of international

representatives and local union officers to attend meetings of the plant committee and management and for sharing the expenses of arbitration.

It is clear, as held by the District Judge, that the arbitration clause embedded in Art. IV, as one of the subsections of section 2, has relation to the controversies which are made the subject of grievance procedure of that article, and not to claims for damages on account of strikes and secondary boycotts, which are matters entirely foreign thereto. Damages arising from strikes and lockouts could not reasonably be held subject to arbitration under a procedure which expressly forbids strikes and lockouts and provides for the settlement of grievances in order that they may be avoided. It would have been possible, of course, for the parties to provide for the arbitration of any dispute which might arise between them; but they did not do this, and the rule noscitur a sociis applies to the arbitration clause in the grievance procedure to limit its application to controversies to which the grievance procedure was intended to apply.

And we think, also, that the learned District Judge was correct in holding that the provisions of the United States Arbitration Act may not be applied to this contract, because it is a contract relating to the employment of workers engaged in interstate commerce, within the clear meaning of the exclusion clause contained in the first section. This is not to say, of course, that such workers and their employers may not agree to arbitrate their differences, but merely that the provisions of the United States Arbitration Act do not apply to their agreements. Art. I of that Act of February.12, 1925, c. 213, as reenacted by the Act of July 30, 1947, c. 392, 9 U.S.C.A. § 1, contains nothing but definitions of "maritime transactions" and "commerce" and an excepting clause; and we think it clear that the excepting clause was intended to apply to the entire act. This becomes even clearer when reference is made to the statute as originally enacted, where the portion containing the definitions and exception is not separately numbered but is manifestly intended to apply to the statute as a whole (43 Stat. 883). It is as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That 'maritime transactions,' as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; 'commerce,' as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, *but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.*" (Italics supplied.)

Section 2 of the act provides for the validity and enforceability of arbitration provisions in maritime transactions and contracts evidencing a transaction in commerce as defined in the act. Section 3 provides for stay of proceedings in federal courts in suits brought on contracts providing for arbitration. Section 4 provides for the enforcement of arbitration agreements in federal courts that would have jurisdiction of the controversy between the parties.* The remaining sections prescribe machinery for conducting the arbitration, entering the award as a judgment of court, vacating the award, modifying it and confirming it by order of court. It is perfectly clear, we think, that it was the intention of Congress to exclude contracts of employment from the operation of all of these provisions. Congress was steering clear of compulsory arbitration of labor disputes; and unless the excepting clause which we have italicized is applied to the entire act, and not confined to the first section, section 4 would give the court power to force arbitration in any agreement providing for arbitration where there is jurisdiction because of diversity of citizenship or other reasons. Of course, if the excepting clause applies to section 4, it applies also to section 3; for the only alternative to applying it to the entire act is to

---

* Sections 2, 3, and 4, 9 U.S.C.A. §§ 2–4, are as follows:

"Sec. 2. A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

"Sec. 3. If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

"Sec. 4. A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by law for the service of summons in the jurisdiction in which the proceeding is brought. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.
* * * "

limit it to section 1. The effect of limiting the excepting clause to section 1 would be merely to exclude employment contracts from maritime transactions and transactions in commerce as defined in the act, so that these would not come within the arbitration agreements made valid and enforceable by section 2, but would leave them, if otherwise valid, to be enforced under the provisions of section 4, the provisions of which are not limited to maritime transactions or transactions in commerce. Whether regard be had to the language of the statute, therefore, or to its reason and spirit and the evident purpose of the excepting clause, it is clear that it is applicable to the entire statute and not merely to the definitions of maritime transactions and commerce.

The questions of interpretation which have troubled the courts have arisen because of the change made in the act in the course of its enactment by Congress. As originally introduced it was designed to make the arbitration provision in "any contract" as well as in any "maritime transaction or transaction involving commerce" valid and enforceable in the federal courts. Section 2 of the act so provided; section 3 provided for stay of court proceedings in such cases and section 4 and the succeeding sections provided for compulsory arbitration under court direction. The exclusion clause of the introductory paragraph excepted contracts of employment from the scheme of enforcing arbitration which the statute envisaged. See Zip Mfg. Co. v. Pep Mfg. Co., D.C., 44 F.2d 184. In the passage of the act through the Senate, however, the second section, which declared arbitration agreements valid and enforceable, was amended so as to eliminate its application to "any contract" and confine it to maritime transactions or contracts evidencing a transaction in commerce. This was doubtless done in recognition of the lack of power in Congress to legislate generally with respect to the validity of contracts. No change was made, however, in the language of sections 3 and 4, which dealt with procedure in the courts, over which Congress had plenary jurisdiction.

We have heretofore held that section 3 of the act should not be interpreted as limited by the provisions of section 2. Agostini Bros. Bldg. Corp. v. United States, 4 Cir., 142 F.2d 854. The reasoning of that decision would apply equally to section 4 and the succeeding sections. There is nothing in this, however, to justify the holding that the exclusion clause should not apply to the entire act and remove employment contracts from the ambit of its provisions, as originally intended. The fact that the Senate struck out the general provision as to contracts from section 2 should not be taken as removing the effect of the exclusion clause which would unquestionably have removed employment contracts from the compulsory arbitration provision of the act, if no change had been made. We may proceed on the assumption, as we did in the Agostini case, that it was the intention of Congress to exercise its full power in furtherance of the principle of arbitration; but we may not carry the assumption so far as to hold that it was the intention to withhold jurisdiction of the federal courts over controversies arising out of employment contracts and to enforce arbitration thereof although the history as well as the language of the act shows it was the intention of Congress not to interfere therewith.

The question here was squarely presented and decided by the Circuit Court of Appeals of the Sixth Circuit in Gatliff Coal Co. v. Cox, 6 Cir., 142 F.2d 876, 882, where that court, speaking through the late Judge Hamilton, said:

"The office of an exception in a statute is well understood. It is intended to except something from the operative effect of a statute or to qualify or restrain the generality of the substantive enactment to which it is attached and it is not necessarily limited to the section of the statute immediately following or preceding. The scope of the exception or proviso in the statute must be gathered from the view of the whole law, and if the language of the exception is in perfect harmony with the general scope of the entire statute, the exclusion is applicable to the whole act. It is clear that the exception here in question was deliberately worded by the Con-

gress to exclude from the National Arbitration Act all contracts of employment of workers engaged in interstate commerce. Section 2 of the Act makes valid and irrevocable all arbitration agreements in writing to submit to arbitration future controversies arising out of the contract of which the arbitration agreement was a part. It would be senseless to say that the exclusion from the Act covers the validity of the contract, but excludes the stay provision of Section 3. The reason for the exclusion is applicable to the entire Act. The language of the exclusion 'herein contained' is found in the first section of the Act. This section is made up entirely of definitions and exceptions to the operation of the title. 'Herein' as used in legal phraseology is a locative adverb and its meaning is to be determined by the context. It may refer to the section, the chapter or the entire enactment in which it is used. The fact that it was used in the present Act in a section where none of the substantive matter set up in the succeeding sections of the Act appeared it must mean that it is to be applied to the whole Act and not to any given section."

■■ We have given careful consideration to the case of Donahue v. Susquehanna Collieries, 3 Cir., 138 F.2d 3, 149 A.L.R. 271, and Watkins v. Hudson Coal Co., 3 Cir., 151 F.2d 311. In the first of these cases no reference was made to the excepting clause contained in the statute and the sole question decided was whether the stay provided by paragraph three of the act was limited to the contracts described in paragraph two. We thoroughly agree with what was said by the Third Circuit on this question and we quoted at length from its opinion in our decision in the Agostini case, supra. The second case merely followed the first, citing our decision, with the additional statement that limitation in the first section should not be applied to the entire act. Judge McAllister dissented from this conclusion, adopting the view followed in the Sixth Circuit. This is the first time that we have had occasion to consider the effect of the excepting clause, and with all respect to the able court whose decision we followed in holding the third section of the act not

limited to the contracts covered by the second, we cannot but think that the excepting clause contained in the defining section of the act was intended to apply to the entire act and to except a contract such as that before us from all provisions of the act.

For the reasons stated, the order denying stay of proceedings will be affirmed.

Affirmed.