## LEWITTES & SONS et al. v. UNITED FURNITURE WORKERS OF AMERICA, C. I. O. et al.

United States District Court
S. D. New York.
March 1, 1951.

852

Aaron Lewittes, New York City, for plaintiffs.

Weinstock & Tauber, New York City, for defendants.

WEINFELD, District Judge.

Plaintiffs, members of a copartnership, instituted this action against defendant-unions to recover damages for breach of a collective bargaining agreement. The complaint recites that the action arises under the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185; that the defendants are the duly certified and exclusive bargaining representatives of plain-

tiffs' employees; and that the defendants have violated the "no strike" clause in the agreement. No answer has been interposed by the defendants to the complaint and they now move pursuant to Section 3 of the United States Arbitration Act, 9 U.S.C.A., for a stay of trial of this action until arbitration has been had in accordance with the terms of the agreement. No relief is sought under Section 4 to compel the parties to proceed to arbitration.

The plaintiffs oppose the defendants' motion on two essential grounds: (1) That the arbitration clause does not apply to claims for damages on account of strikes and secondary boycotts but is limited to controversies which are made the subject of grievance procedure; in a word, that there is no "issue referable to arbitration" as required by Section 3 for the granting of a stay; and (2) that Section 1 of the Arbitration Act, which excludes certain contracts of employment, limits Section 3 so that a stay may not be granted in this action for breach of a collective bargaining agreement. Plaintiffs also argue that the facts of this case fall squarely within the holding in International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., Inc., 4 Cir., 168 F.2d 33.

We consider first plaintiffs' contention that there is no "issue referable to arbitration" for if this view is upheld there is no need for further inquiry.

Clause IX of the agreement provides that there shall be "no strikes, lock-outs or stoppages of work during the life of this agreement." The arbitration provision is contained in clause X, entitled, "Grievance Machinery and Arbitration", the introductory paragraph of which reads: "All grievances, complaints, differences or disputes arising out of or relating to this agreement, or the breach thereof, shall be settled in the following manner:". Then ensues the procedure of successive steps to resolve differences, followed by the final provision that "If

the grievance, complaint, difference or dispute is not adjusted" by the established grievance machinery "it may be submitted by either party to arbitration". The Court is of the opinion that the broad language adopted by the parties is unrestricted and that the question of damages arising by reason of defendants' alleged breach of its non-strike pledge is within its ambit.

The arbitration clause is not made applicable to any specific subject matter, as, for example, hours or working conditions. Moreover, it includes controversies arising out of a breach of the agreement. Nowhere are there words of limitation narrowing the scope of arbitrable matters and the Court is not at liberty to engraft exceptions to the all-embracing language selected by the parties. If there are specific matters intended to be excluded from the reach of the clause, what matters are excluded and which are included and what guide-post has been set up by the parties to establish the categories within which each falls? A careful reading of the agreement indicates no such purpose.

International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., Inc., supra, does not direct a different conclusion. The arbitration clause in the instant action differs substantially from the clause considered in that case. There, the arbitration clause was contained in a title headed, "Grievance Procedure" and was limited thereunder to "A grievance of any employee or a joint grievance of any group of employees, in connection with hours, or other conditions of employment".[1] It was provided that if a dispute involving such matters were not settled through the grievance procedure then the controversy was to be referred to arbitration. The Court held that the arbitration clause, being "embedded" in the grievance procedure, concerned only those disputes which were the subject of that procedure, having no relation to a claim for damages resulting from a strike. In the instant case, while it is true the arbitration clause is con-

---

1. Although the clause is not quoted in its entirety in the Colonial Hardwood case, counsel herein have submitted a copy of the agreement.

tained in a section entitled "Grievance Machinery and Arbitration" it is the lead-off clause and is placed in a dominant position in the text. Moreover, the all-inclusive language which prescribes arbitration of "*all* grievances, complaints, differences or disputes arising out of or relating to this agreement, or the breach thereof," (italics supplied) indicates an intent by the parties to arbitrate the very issue here involved and upon which plaintiff predicates its claim. In a recent decision, Textile Workers Union of America v. Aleo Mfg. Co., 94 F.Supp. 626, the District Court also took the view that the ruling in the Colonial Hardwood case was confined to the specific language of the arbitration clause there considered and interpreted differently the broader language contained in the clause before it.

Plaintiff next contends that Section 3 is limited by the exception which appears in Section 1 that "* * * nothing herein contained shall apply to contracts of employment of * * * workers engaged in foreign or interstate commerce." Before passing upon this contention the Court must necessarily consider the inter-relation of Sections 2 and 3. Section 3 provides that if "any suit" is brought in a Federal Court "upon any issue referable to arbitration under an agreement in writing for such arbitration" the Court is empowered to stay the trial of the action until arbitration has been had. Section 2 of the Act renders "valid, irrevocable, and enforceable" agreements to arbitrate controversies arising out of a "maritime transaction or a contract evidencing a transaction involving commerce". The question thus arises whether, despite the broad language of Section 3, the power to grant a stay is restricted only to such arbitration agreements as are made valid by Section 2, that is, those involving "maritime" or "commerce" transactions.

█ It was suggested in Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 2 Cir., 70 F.2d 297, 298, affirmed 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583, that Section 3 is not so circumscribed and that the language, "Such arbitration" in Section 3 "may very well refer back to 'any issue referable to arbitration,' and not to section 2." This dictum contained in the discussion of Chief Judge Learned Hand has been the basis of subsequent authoritative holdings by various circuits that the stay power granted by Section 3 is not limited to "maritime transactions" or those "involving commerce" mentioned in Section 2. Donahue v. Susquehanna Collieries Co., 3 Cir., 138 F.2d 3, 149 A.L.R. 271; Agostini Bros. Bldg. Corp. v. United States, 4 Cir., 142 F.2d 854; Wilson & Co. v. Fremont Cake & Meal Co., D.C., 77 F.Supp. 364. Only the Sixth Circuit appeared to take issue and its position is not altogether clear with respect to Section 2. The Court there was considering primarily Section 1. Gatliff Coal Co. v. Cox, 142 F.2d 876. The dictum in the Shanferoke case finds support in two subsequent opinions by the Second Circuit, which reiterate the broad stay power of Section 3, although recognizing limitations under Section 4 in proceedings to compel specific performance of arbitration agreements. Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 987; In re Pahlberg Petition, 131 F.2d 968. It is clear that Section 3 is not limited by the provisions of Section 2.

There remains, then, the final objection of plaintiffs that Section 1 of the Arbitration Act, which excepts contracts of employment of workers engaged in commerce, is applicable to Section 3. Section 1, which has been referred to as the definition provision, defines "maritime transaction" and "commerce" and concludes, "* * * but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." The question is whether the exception is applicable only to those sections of the Act in which "commerce" appears or whether it applies to the entire Act, including Section 3 which makes no mention of "commerce". In contrast to their substantial agreement that Section 2 imposes no limitation upon the stay power authorized under Section 3, the Circuit Courts are sharply divided.

Gatliff Coal Co. v. Cox, supra, and International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., Inc., supra, hold that the exception applies to the entire Act, while Watkins v. Hudson Coal Co., 3 Cir., 151 F.2d 311 holds, Judge McAllister dissenting, that it applies only when the word "commerce" appears. There has been no definitive ruling in this Circuit although reference to the exception appears in two cases, Shirley-Herman Co. v. International Hod Carriers, 2 Cir., 182 F.2d 806, 809; Shanferoke Coal & Supply Corp. v. Westchester Service Corp., supra. In the first mentioned case the Court suggested that contracts of employment in interstate commerce are excluded from the Act, or in other words, that the exception applies to the entire Act. In the Shanferoke case, supra, the contention was made that Section 1 cut down the power to stay granted by Section 3. Judge Hand, speaking for the Court, 70 F.2d at page 298, said: "In the Volsino [Volsinio], supra, D.C., 32 F.2d 357, the actual ruling was that although this was true, the section was inapplicable, unless the contract was itself 'maritime' or 'involved commerce,' as defined by section 1 of the act (9 U.S.C.A. § 1). We are not clear that this is true".

However, the Court did not directly consider the exception contained in Section 1 with respect to contracts of employment of workers engaged in commerce.

The Fourth Circuit in International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., Inc., supra, 168 F.2d at page 38, which had adopted the reasoning of the Third Circuit with respect to the non-applicability of Section 2 to Section 3, held " * * * with all respect to the able court whose decision we followed in holding the third section of the act not limited to the contracts covered by the second, we cannot but think that the excepting clause contained in the defining section of the act was intended to apply to the entire act * * *." The Court then declared that it accepted the reasoning of the Sixth Circuit in the Gatliff case.

The views of Judge McAllister, who dissented from his colleagues in the Third Circuit in the Watkins case and those of the Court in the Gatliff case appear the more convincing. Section 1 consists solely of definitions and it contains no substantive matter. The placing of the exception in the definition section demonstrates legislative intent that the exception is applicable to the entire Act and not merely to some sections thereof. Moreover, the caption to Section 1 reads " * * * exceptions to operation of *title*" (italics supplied)—further indication that the exception was meant to apply to the entire Act. Therefore, it is held that the exception cannot be considered as part of the definition of "commerce" and that it applies to the entire Act, thus excluding contracts of employment of workers engaged in commerce from the scope of Section 3.

The foregoing conclusion, however, is not dispositive of the motion for a stay of the pending action. The agreement in question is a collective labor agreement, and, as such, is not a "contract of employment".

"Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what often has been called a trade agreement, rather than in a contract of employment. * * *

"After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. * * *" J. I. Case Co. v. N. L. R. B. 321 U.S. 332, 334, 64 S.Ct. 576, 579, 88 L.Ed 762.

The exception in Section 1 was intended to avoid the specific performance of contracts for personal services in accordance with the traditional judicial reluctance to direct the enforcement of such contracts

856

and it was not intended to apply to collective labor agreements. United Office & Professional Workers of America, C. I. O., v. Monumental Life Insurance Company, D.C., 88 F.Supp. 602.

The purpose of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq. is to bring about peaceful solutions of labor disputes without recourse to industrial strife. Where the parties manifest a purpose to dispose of their disputes by arbitration rather than resort to the use of economic force or pressures, their agreements should be liberally construed with a view toward the encouragement of arbitration. Kulukundis Shipping Co. v. Amtorg Trading Corp., supra. The Courts should be reluctant "to strike down a clause which appears to promote peaceful labor relations rather than otherwise." Shirley-Herman Co. v. International Hod Carriers, supra, 182 F.2d at page 810. The granting of a stay through the interpretation here placed upon the Arbitration Act is in accordance with these policies.

The motion for a stay is granted.

Settle order on notice.