**MARKEL ELECTRIC PRODUCTS, Inc. v. UNITED ELECTRICAL, RADIO & MACHINE WORKERS OF AMERICA, U. E. et al.**

No. 47, Docket 22424.

United States Court of Appeals, Second Circuit.

Argued Dec. 3, 1952.

Decided Feb. 9, 1953.

On Petition for Rehearing March 20, 1953.

Edward D. Flaherty, Buffalo, N. Y., for plaintiff-appellee.

Basil R. Pollitt and David Scribner, New York City, Martin R. Bradley, Jr., Buffalo, N. Y., for defendants-appellants.

Before SWAN, Chief Judge, and CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

On April 1, 1950, the plaintiff-appellee, hereinafter referred to as the company, and

the United Electrical, Radio and Machine Workers of America, U. E., acting for itself and in conjunction with its Local 326, executed a written collective bargaining agreement. The company recognized the union as the exclusive bargaining agency for all of its production and maintenance employees "with respect to rates of pay, wages, hours of employment and all other conditions of employment," and Articles II to VII inclusive set forth in detail the conditions of employment agreed upon.

Article XI provided that the agreement was to continue in effect for one year from its date and from year to year thereafter unless either party notified the other in writing, at least sixty days before any expiration date, of its desire to terminate, "in which event the agreement shall terminate on the expiration date of the year in which the notice is given." And it was further provided in Article XI that, "At least sixty (60) days prior to any expiration date, either party may notify the other in writing of its desire to amend the agreement. If the parties are unable to agree upon the proposed amendment or amendments on or before the expiration date of the contract, then the agreement shall remain in full force and effect until a further written notice is served by either party on the other terminating this agreement."

. Article VIII was entitled "Grievances," and the first paragraph thereof provided: "Should differences arise between the Company and any employee covered by this agreement as to the meaning and application of the provisions of this agreement, or should any trouble of any kind arise in the plant, there shall be no suspension of work on account of such differences, but an earnest effort shall be made to settle such differences immediately in the following manner." The next three paragraphs set forth a three-step grievance procedure by which a dispute was to be referred first to the department foreman and the aggrieved employee and/or his department steward; if no settlement was reached, the matter was then to be referred to the general superintendent and the chief steward; and if still no settlement was reached, the matter was to be referred to the execu-

tives of the company and the Grievance Committee and the International Representative of the Union. Article VIII contained no further procedure to be applicable in the event of no settlement in the way therein provided.

Article IX was entitled "Arbitration" and provided in part that:

"72. In the event that the two parties to this agreement fail to make a satisfactory adjustment of any dispute or grievance and such dispute or grievance involves a question as to the meaning and application of the provisions of this agreement, such dispute or grievance may be submitted to arbitration upon written notice of the party filing the grievance. Such notice is to be served upon the other party within five (5) days after the meeting referred to in the third step of the grievance procedure outlined above. * * * The Board of Arbitration to whom any grievance shall be submitted in accordance with the provisions of this section shall, in so far as shall be necessary to the determination of such grievance, have authority to interpret and apply the provisions of this agreement, but shall not have the power to add to, to disregard, or to modify in any way, any of the terms and conditions of this agreement. * * *
" * * *

"74. There shall be no lockouts or strikes during the life of this agreement. All complaints or grievances shall be settled in accordance with the full procedure outlined in this agreement."

On January 4, 1951, while this agreement was still in effect, the business agent of the union wrote to the president of the company informing him of the union's desire to amend it and proposing a meeting for the purpose of negotiations on wages, hours and working conditions.

The record does not disclose what efforts were made by the parties to agree upon amendments but it does show that the union caused the appellee's employees to strike on August 15, 1951 with the result that

the manufacture and sale of appellee's products were completely stopped. It must be taken for granted that the strike was called solely because of the failure of the parties to agree as to amendments proposed by the union.

On August 17, 1951, pursuant to the provisions of section 301(a) of the Labor Management Relations Act, as amended June 23, 1947, 29 U.S.C.A. § 185, the company brought this suit for damages against the union, claiming that the strike was a breach of the bargaining agreement. The union's answer and amended answer, dated September 14, 1951 and February 19, 1952 respectively, alleged (1) that the company, prior to the date of the alleged strike, had committed several material breaches of the bargaining agreement which constituted an election to terminate the agreement and (2) that this suit was barred because the company had not first referred the dispute to arbitration as required by the contract. The union moved for an order striking the action from the trial calendar and staying all proceedings until arbitration should be had. This motion was denied, and whether such denial was erroneous is the only issue now presented.

■ Such an order is appealable since it is the equivalent of the denial of an injunction. Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440; Shanferoke Coal & Supply Corp. of Delaware v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., 4 Cir., 168 F.2d 33.

The District Court denied the motion for a stay pending arbitration on two grounds. First, it was of the opinion that collective bargaining agreements were not within the scope of section 3 of the U. S. Arbitration Act. See International Union v. Colonial Hardwood Floor Co., supra; Amalgamated Ass'n, etc., Local Division 1210 v. Pennsylvania Greyhound Lines, Inc., 3 Cir., 192 F.2d 310. Second, the calling of the strike was a material breach which terminated the contract, thereby relieving the company of any duty it otherwise would have had under the contract to submit to arbitration.

■ We need not decide whether either or both of the above were proper grounds for denying the motion, since we do not think that the dispute here involved is within the scope of the arbitration clause. The whole tenor of the contract was to lay a groundwork of agreement as to wages, hours and conditions of employment and to provide a peaceful method for the settlement of grievances and disputes over the meaning and application of the agreement with respect to those matters. If efforts in accordance with the procedure of Article VIII proved to be ineffective, resort might be had to Article IX, which provided that an unsettled dispute or grievance was to be submitted to arbitration " * * * upon written notice of the party filing the grievance * * * to be served upon the other party within five (5) days after the meeting referred to in the third step of the grievance procedure outlined above." The quoted language shows clearly that arbitration was to be but a fourth step in the grievance procedure, and as such the subject matter to which it is applicable is no broader than that to which the first three steps applied. The dispute as to whether the union was jusified in calling the strike is one certainly not capable of resolution at a conference between an employee or a department steward, or both, and a department foreman; or between the chief steward and the general superintendent. It is, therefore, not the kind of dispute which was intended to be resolved by submission to arbitration.

As was said in International Union v. Colonial Hardwood Flooring Co., Inc., supra, 168 F.2d at page 35: "Damages arising from strikes and lockouts could not reasonably be held subject to arbitration under a procedure which expressly forbids strikes and lockouts and provides for the settlement of grievances in order that they may be avoided. It would have been possible, of course, for the parties to provide for the arbitration of any dispute which might arise between them; but they did not do this, and the rule *noscitur a sociis* applies to the arbitration clause in the grievance

procedure to limit its application to controversies to which the grievance procedure was intended to apply."

Absent an agreement to arbitrate the subject matter of this suit there was no error in the order denying the appellants' motion. Marchant v. Mead-Morrison Mfg. Co., 252 N.Y. 284, 169 N.E. 386.

Order affirmed.

CLARK, Circuit Judge (dissenting).

The opinion appears to read this extensive collective bargaining agreement too restrictively. In general content and intent it seems to be planned as a complete coverage of employer and employee relationships in this company. So the abitration agreement of Article IX is in terms and, I believe, in intent broader than the narrow and limited subject matter of Article VIII entitled "Grievances." Paragraph No. 72 in Article IX, which several times refers to "any dispute" in addition to "grievance," would seem itself to suggest a broader application than merely to an employee's grievance with working conditions of the earlier Article on Grievances. Nor does the provision for arbitration after the reasonable third step of the grievance procedure—a meeting between employee committee, union representative, and company executives—seem to me to intend importation herein of all the earlier steps in the grievance procedure, such as action by department or chief steward, which is made the real basis for my brothers' decision. But the issue seems significantly put at rest by Paragraph 74 of the Arbitration Article, pointedly also entitled "Arbitration," which prohibits lockouts and strikes, and in the very next sentence provides: "All complaints or grievances shall be settled in accordance with the full procedure outlined in this agreement." The "full procedure" referred to must have been intended to include arbitration, since that is not only the title of the paragraph, but also the subject matter of the entire Article of which it is a part. And the prohibition of strikes in the same paragraph can leave little doubt that arbitration is to be one of the steps in settling "all complaints or grievances" involving

that obligation. Clearly, therefore, an asserted breach of this prohibition is within the very terms of the required arbitration. Even had it seemed to me less clear I should have thought such a broad and enlightened interpretation desirable in the context of the modern labor practice; if arbitration is to be fostered even against conflicting statutory provisions, Wilko v. Swan, 2 Cir., 201 F.2d 439, surely it should be upheld where agreement points and law does not forbid.

If there is a binding agreement to arbitrate the resort to a strike here, the existence of the very cause for arbitration cannot constitute a breach ending defendants' right to arbitrate, as the district court held. And such an agreement can be enforced without regard to the coverage of the United States Arbitration Act, as we have had occasion to point out specifically in Shirley-Herman Co. v. International Hod Carriers, Building & Common Laborers Union of America, Local No. 210, 2 Cir., 182 F.2d 806, 809, 17 A.L.R.2d 609; see also Murray Oil Products Co. v. Mitsui & Co., 2 Cir., 146 F.2d 381; 12 U. of Pitt.L.Rev. 131. If it be urged that now the federal government has taken over complete control of these labor relations, the answer is, as we noted in the Shirley-Herman case, that § 301 of the Taft-Hartley Act, 29 U.S.C. § 185, upholds employer-union contracts and provides a federal forum for their enforcement. See the acute discussion in 65 Harv.L.Rev. 1239. See also Lewittes & Sons v. United Furniture Workers of America, D.C.S.D.N.Y., 95 F.Supp. 851, where Judge Weinfeld in a carefully reasoned opinion reaches a like result by a somewhat different course, as well as the criticisms voiced as to restrictive interpretations of the Arbitration Act in labor matters in Sturges & Murphy, Some Confusing Matters Relating to Arbitration under the United States Arbitration Act, 7 Law & Contemp.Prob. 580, 605–619; 51 Mich.L. Rev. 117; 28 N.C.L.Rev. 225; 17 Duke B.A.J. 195. I think sufficient authority can be found to carry out what seems to me the reasonably clear intent of the parties. I would reverse for grant of the stay.

On Petition for Rehearing.

PER CURIAM.

The majority of the court adheres to the opinion previously filed. Judge CLARK dissents in the accompanying memorandum.

CLARK, Circuit Judge.

There are two important considerations suggested by the petition herein affecting the interpretation of this important collective bargaining agreement which I had hoped my colleagues might be induced to discuss. Since that has not happened, I think I should supplement my dissent by a specific, but brief, reference to them.

The first is that the interpretation now given the agreement not only greatly restricts the use of arbitration on employee and union claims, but eliminates it altogether on any claims of the employer. This is surely a peculiar cutting down of this important and separate "Article IX, Arbitration," which in its broad paragraph 72 covers a failure of "the two parties of this agreement" to make "a satisfactory adjustment of any dispute or grievance" and in its still broader paragraph 74 prohibits equally "lockouts" and "strikes" to state that "All complaints or grievances shall be settled in accordance with the full procedure outlined in this agreement." Had the draftsmen's intent been to make arbitration only the final step in the procedure for handling the individual employee's complaint or grievance, the natural course would have been to have stated the arbitration procedure not as a separate and general article, but as a final paragraph of the grievance procedure. See, for example, the Swift & Company agreement set forth in Gregory & Katz, Labor Law: Cases, Materials and Comments 1216, 1217 (1948).

There is a corollary to this agreement which suggests a serious dilemma in the interpretation made by the majority. This arises from the last paragraph, 71, of the grievance procedure of Article VIII covering discharge of an employee and providing for activity by the Grievance Committee upon written notice of the discharge. Since this eliminates the first two rounds of the ordinary grievance procedure—foreman and employee and/or steward; general superintendent and chief steward—the basic argument of the opinion would require that this, too, be eliminated from the arbitration procedure. But this inclusive provision expressly referring to reinstatement "as a result of a decision of the Arbitration Board" makes such an interpretation impossible. Of course, the discharge of several or many employees can hardly reduce rights available to an employee singly discharged, and hence "lockouts," too, must be subject to arbitration. Yet strikes and lockouts are treated together in the arbitration provision, 74, quoted above; and it surely is a strain in interpretation to say that the first is not subject to arbitration while the second is.

The other consideration is defendants' contention that this agreement is in a standard form of such agreements in industry affecting some "15 million workers and their employers," that it disappoints the confident expectation of these workers as to the scope of arbitration, and that, unlike the simple two-party contract, the parties cannot renegotiate to state their intent without inclusion of a wide area of industry and without new and unexpected reciprocal concessions by the employees. While this contention cannot be fully explored now, its plausibility suggests that further support for the argument could be developed from published materials without too great difficulties. On the importance of arbitration clauses, I do find the judgment of one expert that "Employers and unions already known that there *has* to be some convenient and expeditious method for clearing up not only the routine grievances but also the more fundamental issues so frequently arising under collective agreements." Gregory, Labor and the Law, Rev.Ed., 405.

These and the other considerations originally stated, coupled with the significant importance of the issue involved, suggest to me the desirability of further discussion.