**MILLER METAL PRODUCTS, Inc.**

v.

**UNITED ELECTRICAL, RADIO & MACHINE WORKERS OF AMERICA et al.**

**Civ. 6978.**

United States District Court,
Maryland.

April 27, 1954.

Bernard J. Seff, Webster S. Blades, Baltimore, Md., for plaintiff.

I. Duke Avnet, Baltimore, for defendants.

COLEMAN, Chief Judge.

This is a suit brought under Section 301 of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 185, and is before the Court on a motion of the defendants to stay all further proceedings until arbitration is had of the issues involved, which arise from an alleged breach by the defendants of a written agreement between them and the plaintiff. In the alternative, the defendants, by their motion, request more time within which to answer the complaint.

The material facts alleged in the complaint are as follows: The plaintiff, a Maryland corporation, with its principal place of business in Baltimore, is engaged in the manufacture and sale of steel kitchen cabinets, with extensive purchases and sales made outside the State; and the defendants are both unincorporated associations, one a parent labor union, the United Electrical, Radio and Machine Workers of America, and the other, one of its local unions, each

being a "labor organization" within the meaning of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 185. On March 9, 1953, plaintiff and defendants entered into a lengthy written agreement for a period of one year (subject to renewals for a like period upon prescribed notice being given by either party) plaintiff being therein referred to as the Company and the defendants as the UE, governing the work of defendants' employees at plaintiff's plant, including specific provisions for grievance procedure and arbitration, among them being the following: "Section 45. All differences, disputes and grievances concerning matters in this contract which have not been satisfactorily settled after following the procedure set forth above shall be submitted to arbitration except (1) that no question of a change in the general wage rates shall be within the scope of the arbitration procedure and (2) arbitration shall not add to, subtract from, or alter the terms of the contract." "Section 46. If arbitration shall become necessary then both the Company and the UE shall select an arbitrator. The two arbitrators thus selected shall together select a third by mutual agreement. If the two arbitrators cannot agree upon the third arbitrator within seven (7) days, that arbitrator will be selected by the American Arbitration Association. The expenses of the third arbitrator shall be equally borne by the Company and the UE." "Section 49. The UE agrees not to authorize any strike during the life of this agreement until: The grievance procedure has been exhausted or Unless the Company refuses to abide by the terms of an arbitration award or Unless the Company violates the terms and conditions of this Agreement."

The complaint alleges that on September 15, 1953, plaintiff notified the defendant unions of a proposed change in the work schedule of employees at plaintiff's plant, and that thereupon, in spite of the aforegoing provisions of the agreement between plaintiff and the defendants, the latter ordered a strike of employees at plaintiff's plant which caused plaintiff a serious loss in production and a consequent inability to fulfill its contracts with its customers, for which plaintiff claims $20,000 damages.

The defendant unions base their motion to stay further proceedings upon the Federal Arbitration Act, 9 U.S.C. Secs. 1–14, the pertinent provisions of which are the following: Section 1. "* * * 'commerce', as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Section 3. "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

The defendant unions maintain that the agreement is not a contract of employment in that no individual person had a job by reason of it; that no obligation comes into existence by virtue of the agreement alone, and that therefore the present suit is not exempt from the operation of the Federal Arbitration Act. The unions also contend that plaintiff's employees are not engaged in interstate or foreign commerce, but are merely engaged in the production of goods in the City of Baltimore; that their activities in such production take place en-

tirely within the limits of the State of Maryland and that, therefore, this suit is not exempt from the operation of the Federal Arbitration Act.

On the other hand, the plaintiff contends that the present suit is based upon a labor dispute and that therefore it comes within the provision of Section 1 of the Federal Arbitration Act, excluding from its operation contracts of employment of workers engaged in interstate commerce, since defendants' employees at plaintiff's plant are engaged in interstate commerce.

■ International Union United Furniture Workers of America v. Colonial Hardwood Floor Co., 4 Cir., 168 F.2d 33, was, like the present suit, an employer's action against a labor union and its local organization, and was brought under Sections 301 and 303 of the Labor Management Relations Act of 1947, 29 U.S. C.A. §§ 185 and 187, to recover damages on account of a strike in violation of the provisions of a contract between the employer and the union. This contract provided for final reference to arbitration if settlement of a dispute was not reached by the grievance procedure called for in the contract; and further, that there should be no strikes or lock-outs, and that the specified grievance procedure should be the only method of settling disputes which were covered by the contract. The defendants moved for a stay of proceedings pursuant to Section 3 of the U. S. Arbitration Act, 9 U.S.C.A. § 3, on the ground that the contract upon which the suit was instituted provided for arbitration of the matters in controversy. This Court (Judge Chesnut) denied the stay, 76 F.Supp. 493, holding that the contract did not provide for arbitration of these matters, and also that the United States Arbitration Act had no application because of the provision in the first section of the Act excluding from its operation contracts of employment of workers engaged in interstate commerce. The defendants appealed from this order, and the Court of Appeals affirmed.

In the Court's opinion (Judge Parker), the following was said, 168 F.2d 33, 35–37: "It is clear, as held by the District Judge, that the arbitration clause embedded in Art. IV. as one of the subsections of section 2, has relation to the controversies which are made the subject of grievance procedure of that article, and not to claims for damages on account of strikes and secondary boycotts, which are matters entirely foreign thereto. Damages arising from strikes and lockouts could not reasonably be held subject to arbitration under a procedure which expressly forbids strikes and lock-outs and provides for the settlement of grievances in order that they may be avoided. It would have been possible, of course, for the parties to provide for the arbitration of any dispute which might arise between them; but they did not do this, and the rule noscitur a sociis applies to the arbitration clause in the grievance procedure to limit its application to controversies to which the grievance procedure was intended to apply.

"And we think, also, that the learned District Judge was correct in holding that the provisions of the United States Arbitration Act may not be applied to this contract, because it is a contract relating to the employment of workers engaged in interstate commerce, within the clear meaning of the exclusion clause contained in the first section. This is not to say, of course, that such workers and their employers may not agree to arbitrate their differences, but merely that the provisions of the United States Arbitration Act do not apply to their agreements. Art. I of that Act of February 12, 1925, c. 213, as reenacted by the Act of July 30, 1947, c. 392, 9 U.S.C.A. § 1, contains nothing but definitions of 'maritime transactions' and 'commerce' and an excepting clause; and we think it clear that the excepting clause was intended to apply to the entire act. * * *

* * * * * *

"Section 2 of the act provides for the validity and enforceability of arbitration provisions in maritime transactions and

contracts evidencing a transaction in commerce as defined in the act. Section 3 provides for stay of proceedings in federal courts in suits brought on contracts providing for arbitration. Section 4 provides for the enforcement of arbitration agreements in federal courts that would have jurisdiction of the controversy between the parties. The remaining sections prescribe machinery for conducting the arbitration, entering the award as a judgment of court, vacating the award, modifying it and confirming it by order of court. It is perfectly clear, we think, that it was the intention of Congress to exclude contracts of employment from the operation of all of these provisions. Congress was steering clear of compulsory arbitration of labor disputes; and unless the excepting clause which we have italicized is applied to the entire act, and not confined to the first section, section 4 would give the court power to force arbitration in any agreement providing for arbitration where there is jurisdiction because of diversity of citizenship or other reasons. Of course, if the excepting clause applies to section 4, it applies also to section 3; for the only alternative to applying it to the entire act is to limit it to section 1. The effect of limiting the excepting clause to section 1 would be merely to exclude employment contracts from maritime transactions and transactions in commerce as defined in the act, so that these would not come within the arbitration agreements made valid and enforceable by section 2, but would leave them, if otherwise valid, to be enforced under the provisions of section 4, the provisions of which are not limited to maritime transactions or transactions in commerce. Whether regard be had to the language of the statute, therefore, or to its reason and spirit and the evident purpose of the excepting clause, it is clear that it is applicable to the entire statute and not merely to the definitions of maritime transactions and commerce."

We are satisfied that the aforegoing decision of the Court of Appeals of this Circuit is directly applicable to the case before us, and that in accordance with that decision the motion of the present defendants to stay further proceedings pending arbitration must be denied.

Counsel for the defendants contend that the Furniture Workers case is distinguishable factually from the one before us because the contract involved in that case provided that there should be no strikes or lock-outs, and the arbitration clause was limited to disputes which were made the subject of the grievance procedure only; whereas in the present case strikes are permissible under the contract and the arbitration clause is broader, covering "all differences, disputes and grievances." In support of this contention counsel for defendants seek to rely upon passages in Judge Parker's opinion above quoted that the parties in the International Union case could have agreed, although they did not do so, that *all* disputes between them might be made the subject of arbitration. However, *this statement is clearly not to be taken* as suggesting that the United States Arbitration Act may be invoked in any case where, as in the present one, apart from other considerations, the United States Arbitration Act cannot be held to apply because the contract in question relates to the employment of workers engaged in interstate commerce, within the clear meaning of the exclusion clause contained in the first section of the Act. It is clear that in the present case the union workers at plaintiff's plant were engaged in interstate commerce insofar as appears in the pleadings. It is maintained that the argument advanced on behalf of the unions is supported by Textile Workers Union of America v. Aleo Manufacturing Co., 94 F.Supp. 626, a decision of the District Court for the Middle District of North Carolina. In its opinion the Court said, 94 F.Supp. at page 627: "Article 9 of the bargaining agreement here contains what was lacking in International Union United Furniture Workers v. Colonial Hardwood Flooring Co., 4 Cir., 168 F.2d 33, 35, in which Judge Parker said: 'It would have been possible, of course, for

the parties to provide for the arbitration of any dispute which might arise between them; but they did not do this.'" Obviously, this statement of Judge Parker, which we have heretofore quoted, was not intended to support the argument made on behalf of the present defendant unions that the United States Arbitration Act could be invoked to enforce arbitration in *every* agreement containing an unlimited arbitration clause. This is precisely what Judge Parker said could not be done. Furthermore, it is to be noted that in the Textile Workers Union of America case, the United States Arbitration Act was not, in fact, involved. See especially Shirley-Herman Co. v. International Hod Carriers, etc., 182 F.2d 806, a decision of the Court of Appeals for the Second Circuit, which follows the Fourth Circuit decision, supra.

With respect to the remaining contention made on behalf of the defendant unions that their agreement with the plaintiff is not a contract of employment within the meaning of the United States Arbitration Act, suffice it to say that the decision in the International Union case, supra, is sufficient authority to the contrary. See also to the same effect Amalgamated Association, etc. v. Pennsylvania Greyhound Lines, 3 Cir., 192 F.2d 310; Pennsylvania Greyhound Lines v. Amalgamated Association, etc., 3 Cir., 193 F.2d 327. On this point Lewittes & Sons v. United Furniture Workers, D.C., 95 F.Supp. 851, which counsel for the unions cite, appears to us to have been wrongly decided. The Supreme Court decision in J. I. Case Co. v. National Labor Relations Board, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762, which is also cited on behalf of defendant unions, is not in point. It does not deal with the United States Arbitration Act. As was said in Amalgamated Association, etc. v. Pennsylvania Greyhound Lines, supra, 192 F. 2d 310, at page 313, "Our attention has been directed to Justice Jackson's statement in J. I. Case v. N. L. R. B., 1944, 321 U.S. 332, 334–335, 64 S.Ct. 576, 88 L.Ed. 762, to the effect that collective bargaining agreements are not contracts of employment. But this reference is inapposite because the factual context of that case necessitated the drawing of a distinction between collective as opposed to individual contracts of employment. There is no similar compulsion in the context of the Arbitration Act."

For the aforegoing reasons, the motion of defendants must be denied.