**INTERNATIONAL UNION, UNITED AUTOMOBILE AIRCRAFT, etc., et al., Appellants,**

v.

**BENTON HARBOR MALLEABLE INDUSTRIES, Appellee.**

No. 12920.

United States Court of Appeals Sixth Circuit.

March 29, 1957.

Redmond H. Roche, Detroit, Mich., Harold A. Cranefield, Kurt L. Hanslowe, Redmond H. Roche, Jr., and Gordon A. Gregory, Detroit, Mich., on the brief, for appellants.

Elden W. Butzbaugh, Benton Harbor, Mich., Victor Lewis, Chicago, Ill., Vedder, Price & Kaufman, Chicago, Ill., on the brief, for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appellee, a Michigan corporation, having its principal offices in Benton Harbor, Michigan, filed this action in

the District Court against the appellants, International Union and Local No. 880, United Automobile, Aircraft and Agricultural Implement Workers of America, seeking damages by reason of strikes and work stoppages in violation of the collective bargaining agreement on the part of its employees at various plants of the appellee.

Jurisdiction is based upon Section 301 of the Labor Management Relations Act of 1947, Section 185, Title 29 U.S.C.A. Shirley-Herman Co. v. International Hod Carriers, etc., 2 Cir., 182 F.2d 806, 17 A.L.R.2d 609; Hamilton Foundry & Mach. Co. v. International M. & F. Wkrs., 6 Cir., 193 F.2d 209, 214, certiorari denied 343 U.S. 966, 72 S.Ct. 1060, 96 L.Ed. 1363.

The amended and supplemental complaint, after making necessary jurisdictional allegations, stated that on February 26, 1952 the appellants and appellee entered into a written contract covering wages, hours of work, conditions of employment, the method of adjusting alleged grievances and other matters with respect to the employees of the appellee who were being represented by the appellants, which contract was in force and effect at the times complained of. Article III paragraph 1, of the contract provided as follows:

> "1. Shall difference arise between the Company and the Union as to the meaning and application of this Agreement, or should any local trouble arise, an earnest effort shall be made to settle such differences, and it is agreed by the Union that there shall be no strike, slowdown or stoppage of work on the part of the Union or its members and there shall be no lockout on the part of the Company during the term of this contract. The parties shall in all instances resort to the following steps of the grievance procedure."

It further stated that the appellee had at all times fully performed and complied with the terms and conditions of the contract, but notwithstanding the said contract and in violation thereof and without exhausting the procedure provided in the contract for the settlement of grievances, the five strikes and work stoppages complained of had occurred, that the strikes and work stoppages were caused, authorized and condoned by the appellants and their officers and agents who, by reason thereof, had breached said contract, resulting in damage to the appellee in the sum of $6,000,000.

The appellants filed a motion to dismiss and in the alternative, a motion to stay the proceedings until arbitration of the matters complained of by the appellee shall have been had in accordance with the provisions of the U. S. Arbitration Act, Section 3, Title 9 U. S. Code. The District Judge denied both motions. This appeal is from that portion of the order which denied appellants' alternative motion to a stay pending arbitration. Sect. 1292(1), Title 28 U. S. Code; Hoover Motor Express Co. v. Teamsters, Chauffeurs, etc., 6 Cir., 217 F.2d 49, 51–52.

■■ In the absence of a statute so providing, a party to a contract cannot as a matter of right have his differences or disputes with the other contracting party under the contract submitted to arbitration. There is no common-law right of arbitration. Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, 43 S.Ct. 630, 67 L.Ed. 1103; Mengel Co. v. Nashville Paper Products & Specialty Workers Union, 6 Cir., 221 F.2d 644, 647. In some states he may acquire the right by such a provision in the contract, although in other states a provision requiring arbitration, while still executory, is not enforceable. Gatliff Coal Co. v. Cox, 6 Cir., 142 F.2d 876, 881; Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 120–121, 44 S.Ct. 274, 68 L.Ed. 582. See: Bernhardt v. Polygraphic Co., 350 U.S. 198, 203–205, 76 S.Ct. 273, 100 L.Ed. 199. Appellants' right to arbitrate the question of liability under the no-strike provision in the contract accordingly must depend upon the provisions of the contract. If the contract gives the right of arbitra-

tion, it is enforceable under the provisions of Sect. 3 of the United States Arbitration Act, Sect. 3, Title 9 U. S. Code. Sect. 3 of the Act provides:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

■ It is appellants' contention that under paragraphs 1 through 6 of Article III of the collective bargaining agreement the issues tendered by the complaint are arbitrable issues, and being such, the court should grant a stay under Sect. 3 of the Arbitration Act. Whether this contention is sound depends upon the construction of the written contract. Local 205, etc. v. General Electric Co., 1 Cir., 233 F.2d 85, 101; Annotation, 24 A.L.R.2d at pages 757–761.

■ As a preliminary question, appellants urge upon us the proposition that the primary decision as to what is arbitrable should itself be left to an arbitrator operating under the contract, with the court confining itself to granting a stay pending the arbitrator's ruling on this issue and the arbitration itself, if the arbitrator decides the question is arbitrable under the contract. They contend that the arbitrator's ruling that the question is an arbitrable one can be reviewed by the court later at the same time when any award is brought before it for review. They point out that arbitration of disputes between management and labor is in the public interest in that it is conducive to bringing about the peaceful solutions of labor disputes, that the modern day approach to the problem favors such procedure, and that if the claim of the right to arbitrate is not frivolous or patently baseless, the final review of all questions by the court prevents irreparable injury to either party. They liken the power of the arbitrator to decide such an issue to the power of the court to pass on the question of its jurisdiction in a cause brought before it before passing on the merits.

Conceding for the purpose of argument the practical desirability of such a rule, it is not our province to put it into effect if it is contrary to settled principles of law. We are reminded that "history convinces us that the hoary though probably misguided judge-made reluctance to give full effect to arbitration and agreements cannot now be ignored by us as a matter of federal law without a pretty explicit statutory basis for so doing." Local 205, etc. v. General Electric Company, supra, 1 Cir., 233 F.2d 85, 96. As pointed out in that case, at page 101, such a procedure can be provided by the arbitration agreement if the parties so desire, but whether they have done so is a problem of contract interpretation. As said in Local 379, etc. v. Jacobs Mfg. Co., D.C.Conn., 120 F.Supp. 228, 231, "Resolution of the 'jurisdiction-to-decide-jurisdiction' question must depend upon the provisions of the contract." If we recognize the settled rule that a party to a contract has no right to arbitrate a dispute under the contract unless the contract so provides, it seems to necessarily follow that he has no right to arbitrate the question of arbitrability unless the contract so provides. This is clearly the rule under the Arbitration Act, which provides in Sect. 3 that "the *court* in which such suit is pending, *upon being satisfied* that the issue involved * * * is referable to arbitration under such an agreement" shall stay the trial pending arbitration. (Emphasis added.) We are of the opinion that the question of whether an issue is an arbitrable one under a contract of arbitration is a legal question for the Court rather than for the arbitrator in the absence of a contract giving the

arbitrator such jurisdiction. We do not find any such provision in the contract now under consideration. Annotation, 24 A.L.R.2d at page 766.

Proceeding to the question of whether the issue involved in this suit is referable to arbitration under the contract, we have difficulty in ascertaining what the issue is. The appellants have filed no answer. Their motion for a stay and the affidavit in support of it does not state what the issue is. In the present state of the record liability is not denied either by a traverse or by confession and avoidance. Outside of the record, we were not able to ascertain in the oral argument of this appeal what issue would be presented to the arbitrator other than the amount of damages. Appellants contend that the word "issue" as used in the Act does not mean an issue made by the pleadings, but should be construed in its broad, common sense meaning of "claim," which is satisfied by reading the allegations of the complaint. Donahue v. Susquehanna Collieries Co., 3 Cir., 138 F.2d 3, 4, 149 A.L.R. 271. Assuming that the words "issue involved in such *suit*" (emphasis added) means merely an undenied, unsatisfied claim, about which we have some doubt, we are still not able to determine whether the claim is one "referable to arbitration" unless we know the nature of the defense to it. If there is no valid defense and the failure or refusal to pay is merely an attempt to postpone the day of reckoning or possibly because of a present inability to pay, it would not be an arbitrable claim or issue. In some jurisdictions lack of good faith in presenting an alleged issue prevents the claim from being an arbitrable one. Annotation: 24 A.L.R.2d at pages 762–764.

■ If liability is to be denied, there are several possible defenses that might be asserted if supported by the facts, as yet unknown to us. In a suit for breach of contract possible defenses include invalidity of the contract, either as a matter of law, or because of lack of authority to execute the contract, or because of fraud or duress in its exe-cution, or by mutual cancellation of the contract at a later time. Such defenses would not involve a "difference * * * between the Company and the union as to the meaning and application of this agreement" as provided in Article III, paragraph 1. Annotation: 24 A.L.R. 2d at pages 767–769. Repudiation of the contract by the Company or admitted failure or refusal to perform its obligations thereunder are other possible defenses not involving the meaning of the contract. Breach of contract might be admitted, coupled with a denial that any damage was caused thereby, with the unions contending that the alleged loss of business was due to a change in business conditions, increased competition, mismanagement, or other shut-downs in no way connected with the strikes. The possible issues are numerous and varied, some referable to arbitration, others clearly not. The Arbitration Act requires the court to be "satisfied that *the issue involved* in such suit or proceeding is referable to arbitration * * *"" (emphasis added), before a stay is granted. In the present state of the record, we are not so satisfied. Metal Polishers, etc. v. Rubin, D.C.E. D.Pa., 85 F.Supp. 363.

If we assume that an issue has been made which in some form denies liability for the strikes, we are nevertheless of the opinion that a proper construction of the contract provisions does not entitle the appellants to a stay pending arbitration.

■ Article III, paragraph 1, contains an unequivocal, unconditional obligation not to strike or engage in a work stoppage during the term of the contract. It recognizes that a "difference" might arise between the Company and the union which, if not settled, would lead to a strike. It looks to a settlement of that difference by use of the grievance procedure, but there is nothing in that paragraph which relieves the unions of their unconditional obligation not to have a strike. The "difference" or "grievance" is to be arbitrated to a final conclusion, but while it is being arbitrat-

ed and regardless of how it is eventually decided and terminated, there is to be no strike. The thing to be arbitrated is the "difference" or "grievance," not the right to strike or any claimed justification for the strike. There was no right to strike. The arbitration called for by this paragraph of the contract was to be used instead of a strike, not to determine whether the strike was justified after it had occurred. The right to strike was not arbitrable issue under this paragraph of the contract. Shirley-Herman Co. v. International Hod Carriers, etc., supra, 2 Cir. 182 F.2d 806, 810, 17 A.L.R.2d 609; International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., 4 Cir., 168 F.2d 33, 35; United Electrical, R. & M. Wkrs. of America v. Miller Metal Products, Inc., 4 Cir., 215 F.2d 221, 223; Markel Electric Products, Inc., v. United Electrical, R. & M. Wkrs., 2 Cir., 202 F.2d 435, 437. See also: Cuneo Press, Inc., v. Kokomo Paper Handler's Union No. 34, 7 Cir., 235 F.2d 108, certiorari denied 352 U.S. 912, 77 S.Ct. 149, 1 L.Ed.2d 119.

■ Appellants also rely upon Article III, paragraph 6, of the contract, which reads as follows:

"In the event any grievance relating to the meaning or application of this Agreement is not satisfactorily disposed of in the foregoing steps of the grievance procedure, either party may submit the unsettled grievance to an impartial arbitrator agreed upon by them, provided notice is given to the opposite party within fifteen (15) days after the Shop Committee-Management meeting (above referred to) of intention to arbitrate. The parties shall bear equally the expenses of arbitration. The Arbitrator shall have no power to add to, ignore or modify any terms of this Agreement. His decision shall be final and binding upon both parties to this Agreement.

They contend that the alleged breach of the no-strike agreement is a "grievance relating to the meaning or application" of the agreement, which under said paragraph is an arbitrable issue. This court has previously considered this question. We said in Hoover Motor Express Co. v. Teamsters, Chauffeurs, etc., supra, 6 Cir., 217 F.2d 49, 53–54, "In the commonly accepted meaning of the term 'grievance,' violation of a no-strike provision in a collective bargaining agreement does not constitute a grievance" and "the violation of the no-strike agreement of the collective bargaining contract is not a grievance." Other courts have also so held. International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., 4 Cir., supra, 168 F.2d 33; Harris Hub Bed & Spring Co. v. United Electrical, R. & M. Wkrs., D.C.M.D.Pa., 121 F.Supp. 40, 43; Bassick Company v. Bassick Local 229, D.C.Conn., 126 F. Supp. 777, 779.

Paragraph 6 of Article III must be read in conjunction with the preceding paragraphs 1–5 of the Article. Paragraph 1 provides that the parties shall in all instances "resort to the following steps of the grievance procedure." Paragraphs 2–6 are the "following steps." Paragraph 2 provides: "Any *employe* having a grievance shall first submit the same to the steward of his department or to his foreman." (Emphasis added.) Paragraphs 3, 4 and 5 deal with successive proceedings if the grievance is not settled at different levels of negotiations, using the term "the unsettled grievance" and any grievance which "cannot be settled." Paragraph 6, as hereinabove set out, finally provides for the submission of "the unsettled grievance to an impartial arbitrator." The grievance referred to in paragraphs 2–6 is a grievance on the part of an employe against the employer, not a grievance by the employer against the union. There is nothing in paragraphs 2–6 inclusive which provides for arbitration of a claim for damages by the *employer* against the union. Square D. Co. v. United Electrical, R. & M. Wkrs., D.C. E.D.Mich., 123 F.Supp. 776, 783.

There being nothing in the collective bargaining agreement which gives the appellants the right to submit to arbitration the question of its liability for the claimed breach of its no-strike obligation, the U. S. Arbitration Act has no application and the stay order was properly denied. Hoover Motor Express Co. v. Teamsters, Chauffeurs, etc., supra, 6 Cir., 217 F.2d 49, 54.

The judgment is affirmed.