**VULCAN–CINCINNATI, INC., Plaintiff-Appellee,**

v.

**UNITED STEELWORKERS OF AMERICA, AFL–CIO, Defendant-Appellant.**

No. 14269.

United States Court of Appeals
Sixth Circuit.

April 14, 1961.

Robert I. Doggett, Cincinnati, Ohio, Walter F. Smith, Robert I. Doggett, Smith & Latimer, Cincinnati, Ohio, on brief, for appellant.

J. Mack Swigert, Cincinnati, Ohio, J. Mack Swigert, Robert G. Stachler, and Steer, Strauss & Adair, Paul W. Steer, Cincinnati, Ohio, on brief, for appellee.

Before MILLER, Chief Judge, and CECIL and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Plaintiff-appellee brought suit in the District Court for the Southern District of Ohio against defendant-appellant, United Steelworkers of America, AFL-CIO, under Section 301 of the Taft-Hartley Act (29 U.S.C.A. § 185) to recover damages claimed to have been sustained as a result of a strike at plaintiff's plant at Woodlawn, Ohio. Defendant Union moved to dismiss the complaint, or, in the alternative, for a stay of proceedings pending arbitration. Defendant relies upon the United States Arbitration Act (Title 9 U.S.C. § 3) and the provisions of a collective bargaining agreement existing between plaintiff and the Union during the times involved. The district judge denied defendant's motions. Defendant appeals only from the order denying the stay.

The Union contends that it was entitled to a stay of proceedings pending arbitration, asserting that plaintiff's complaint involved a matter which, under the collective bargaining agreement, should have been submitted to arbitration. That agreement contained a no strike clause and a grievance procedure in the following language:

"Section 7—Adjustment of Grievances

"A—Should differences arise between the Company and Union as to the meaning or application of the provisions of this Agreement, or should any local trouble of any kind arise in the plant, there shall be no lockouts, strikes, work stoppages or slowdowns engaged in by the parties hereto, but the matter shall be settled immediately in the following manner and order:

"1. between the aggrieved employee and/or member or members of the Grievance Committee and the Foreman of the department involved;

"2. between the aggrieved employee and/or a member or members of the Grievance Committee designated by the Union, and the Superintendent of the department;

"3. between the aggrieved employee and/or a member or members of the Grievance Committee, designated by the Union, and the Personnel Manager; before this step the subject matter of the grievance shall be reduced to writing, signed by the aggrieved employee and/or the Grievance Committee, and presented to the Personnel Manager;

"4. between representatives of the International Union and the representatives of the Executives of the Company;

"5. in the event that the matter shall not have been settled satisfactorily, it shall then be appealed to an impartial umpire to be appointed by mutual agreement of the parties hereto. If the parties cannot agree to an arbitrator the matter will be presented jointly to the American Arbitration Association. The expense and compensation incident to the services of the umpire shall be paid jointly by the Company and the Union. The decision of the umpire

shall be final and binding upon the parties hereto.

"It is further agreed that notification of intent to appeal any grievance from step 3 to step 4 or from step 4 to step 5 of this procedure shall be given within thirty-one (31) calendar days of a decision at either of these steps, otherwise the grievance shall be considered settled on the basis of the decision made at the last step and shall not be subject to further appeal. If additional time beyond the thirty-one day limit is needed by either the Union or management, such time will be granted if requested by the side requiring such time. The aforementioned provisions would apply to all grievances excepting those in the cases of discharge or disciplinary layoffs as mentioned in Section 9."

Plaintiff's complaint alleged that on December 8, 1959, a strike and work stoppage occurred at its plant, which strike was caused, engaged in, permitted and supported by defendant and its officers, agents and members; it charged that such conduct was a violation of the no strike clause and resulted in damage to plaintiff.

It should be sufficient, in disposing of this appeal, to refer to this court's decision in International Union, United Automobile, Aircraft, etc. v. Benton Harbor Malleable Industries, 6 Cir., 1957, 242 F.2d 536, 538. The facts and legal questions involved in that case are so similar to the case before us that, if we are to follow it, we must affirm the district judge. In the Benton Harbor case, the collective bargaining agreement in Article III, paragraph 1, provided:

"1. Shall difference arise between the company and the Union as to the meaning and application of this agreement, or should any local trouble arise, an earnest effort shall be made to settle such differences, and it is agreed by the Union that there shall be no strike, slowdown or stoppage of work on the part of the Union or its members and there shall be no lockout on the part of the company during the term of this contract. The parties shall in all instances resort to the following steps of the grievance procedure."

While such language is not identical in every particular with the beginning paragraph of the Adjustment of Grievances section (Section 7) in the contract before us, its content is such that we may here consider it to be the same. The plaintiff industry in that case, as in the case at bar, charged that, in violation of the no strike clause of its contract with a Union, five work stoppages occurred which were caused, authorized and condoned by the Union. The defendant Union was sued for damages. It made the same motion as is involved here, namely, a motion to dismiss or, in the alternative to stay proceedings until arbitration of the matters involved had been held in accordance with the provisions of the United States Arbitration Act, 9 U.S.C. § 3. We there affirmed an order of the district court denying such motions. After reviewing the wording of the contract in the Benton Harbor case, Judge Miller held that the company's right to recover damages for violation of the no strike clause did not involve a grievance subject to arbitration. He said:

"The thing to be arbitrated is the 'difference' or 'grievance', not the right to strike or any claimed justification for the strike. There was no right to strike. The arbitration called for by this paragraph of the contract was to be used instead of a strike, not to determine whether the strike was justified after it had occurred. The right to strike was not arbitrable issue under this paragraph of the contract."

Defendant, however, urges that Benton Harbor should not be controlling here, because, first, it contends that the language of the adjustment of grievance provision in this case is distinguishable from that in the contract involved in the Benton Harbor case, and, second, that the standing of Benton Harbor as a con-

trolling authority has been impaired by subsequent decisions of the United States Supreme Court, which we will discuss hereinafter.

In this case, after the agreement that there shall be no strikes, the contract provides, "but the matter shall be settled immediately in the following manner and order." (Then follow the outlined steps of the grievance procedure.) In the same position in the Benton Harbor case, the contract provides, " 'The parties shall in all instances resort to the following steps of the grievance procedure.' " We find no substance to the claim that the first quoted language calls for arbitration of a claimed violation of the no strike clause, whereas we held that the other did not.

A fair reading of the adjustment of grievances clause before us demonstrates that the grievances therein considered are grievances of employees. After the introductory paragraph, Section 7 of the contract sets forth the steps which shall be employed in the adjustment of grievances. In each of the steps numbered one, two, three and four, the "aggrieved party" is in every instance either an employee or his representative. Before step three may be processed, the subject matter of the grievance "shall be reduced to writing, signed by the aggrieved employee and/or the grievance committee." No language in steps one, two or three has any reference to a grievance of the employer. Arbitration does not come into operation until step five, after steps one to four have been concluded. Step five provides that in the event the matter shall not have been settled, "it shall then be appealed to an impartial umpire." It would do violence to the clear language of this grievance procedure to hold that this contract intended that the company, as well as its employees and the Union, would have grievances which would be adjusted by such procedure.

The Union, however, claims that notwithstanding the language of the various grievance steps, we should read the contract as requiring the company to submit any claim for violation of the no strike clause as a grievance and then, if not adjusted satisfactorily, to arbitrate. It calls attention to the language in the opening paragraph of Section 7 of the contract which says, "or should any local trouble of any kind arise in the plant" and equates that language to an unlawful or wildcat strike. Our decision in the Benton Harbor case disposes of that contention. The contract there involved had equivalent language as follows, "or should any local trouble arise." In Markel Electric Products, Inc. v. United Electrical, Radio & Machine Workers, 2 Cir., 202 F.2d 435, 436, the Second Circuit held that the language, "or should any trouble of any kind arise in the plant," did not require that a company submit the question of violation of a no strike clause to arbitration.

In this case, the Union further contends that there is other language in Section 7 which requires a construction that the violation of the no strike clause was subject to arbitration. After providing for the method of selecting an impartial arbitrator, in case a grievance had not been settled at the preliminary steps, the contract provided for notification of intent to appeal any grievance from step three to step four, or from step four to step five, and that such notice should be given "within thirty-one calendar days of a decision at either of these steps." It then provided, "if additional time beyond the thirty-one day limit is needed, by either the Union or management, such time will be granted if requested by the side requiring such time." It is contended that this language evidences the intent of the contracting parties to require management to submit any difference, including the claim for damages for violation of the no strike clause, to arbitration. We do not so construe the mentioned clause. Even if we indulge the assumption that the provision in the collective bargaining agreement so extending the time for appeal contemplated a right of appeal on the part of management, any such appeal would necessarily be taken from one of the prior steps in the grievance procedure. As pointed out, these steps related only to grievances initiated by aggrieved em-

ployees or their representative. Consequently, the provision extending the time for appeal does not change or expand the matters which, after exhaustion of the grievance procedure, could be submitted for arbitration.

In Benton Harbor, a clause not unlike the one we are considering here was urged by the Union as indicating an intent of the contract that violation of the no strike clause was an arbitrable issue. The clause in Benton Harbor so considered read, " * * * *either party* may submit the unsettled grievance to an impartial arbitrator agreed upon by them, provided notice is given to the *opposite party* within fifteen (15) days after the Shop Committee-Management meeting (above referred to) of intention to arbitrate." 242 F.2d 536, 541. Relating to that clause, we said in Benton Harbor, "We said in Hoover Motor Express Co. v. Teamsters, Chauffeurs, etc., 6 Cir., 217 F.2d 49, 53, 54, 'In the commonly accepted meaning of the term "grievance," violation of a no-strike provision in a collective bargaining agreement does not constitute a grievance.'" 242 F.2d 536, 541.

While the contract language involved was not identical with the contract in Benton Harbor and the case at bar the following authorities sustain our position in Benton Harbor. International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., 4 Cir., 1948, 168 F.2d 33; United Electrical, Radio & Machine Workers of America v. Miller Metal Products, Inc., 4 Cir., 1954, 215 F.2d 221; Markel Electric Products, Inc. v. United Electrical, Radio & Machine Workers, 2 Cir., 1953, 202 F.2d 435. In the latter case, the same contention was made as is here made, namely, that because either party had the right to appeal to an arbitrator, violation of a no strike clause was arbitrable. The Second Circuit there said,

"The quoted language shows clearly that arbitration was to be but a fourth step in the grievance procedure, and as such the subject matter to which it is applicable is no broader than that to which the first three steps applied. The dispute as to whether the union was justified in calling the strike is one certainly not capable of resolution at a conference between an employee or a department steward, or both, and a department foreman; or between the chief steward and the general superintendent. It is, therefore, not the kind of dispute which was intended to be resolved by submission to arbitration." 202 F.2d 435, 437.

Defendant argues, however, that Benton Harbor and like decisions in other circuits should no longer be considered as controlling authorities in view of three cases decided by the United States Supreme Court in June of 1960, namely, United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409; and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed. 2d 1424. While, indeed, these decisions indicate that the widest scope should be given to arbitration as a means of settling and composing industrial strife, they are not in point with the issue before us. All of them have one basic difference from our case in that none of them involved the question of whether a violation of a no strike clause of a collective bargaining agreement is an arbitrable issue. In each of these cases, the court was considering arbitrability of unsettled grievances initiated by employees or on their behalf by representatives of their Union.

Although these cases extend the scope of arbitration, they adhere to certain well established principles. First, that no contracting party can be compelled to submit to arbitration any matter which he has not agreed to submit. United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, 363 U.S. at page 582, 80 S.Ct. at page 1353. Second, the question of whether a particular matter is arbitrable is for the

courts to decide. United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, 363 U.S. at page 583, note 7, 80 S.Ct. at page 1353. Likewise, Justice Douglas supports the proposition that grievances, in situations with which we are dealing, relate to grievances of employees. At page 584 of Warrior & Gulf Navigation, 80 S.Ct. at page 1354, he says, "Every grievance in a sense involves a claim that management has violated some provision of the agreement." It cannot be said, therefore, that these cases and the principles enunciated therein conflict with our holding in Benton Harbor, nor do they change our conclusion that in the case before us a violation of the no strike clause was not a matter to be submitted to arbitration.

█ In the latest decision that has come to our attention, the Second Circuit in an opinion handed down on February 17, 1961, in the case of Drake Bakeries, Inc. v. Local 50, American Bakeries & Confectionery Workers, International, AFL–CIO, 287 F.2d 155, reaffirmed prior decisions holding that violation of the no strike clause was not a grievance to be submitted to arbitration. In that case, the court discusses an earlier Second Circuit decision, Signal-Stat Corp. v. Local 475, etc., 2 Cir., 1956, 235 F.2d 298, a case relied upon by the Union here for its contention. In the Signal-Stat case, the collective bargaining agreement specifically required the company as well as the Union to submit grievances to arbitration. Under that type of agreement, which also had a grievance clause much broader than the one in the agreement here, the court held that the company was obliged to submit a breach of the no strike clause to arbitration. Although the opinion in the Drake Bakeries case does not overrule the Signal-Stat case, the court distinguished it and relied on its earlier opinion in Markel Electric Products, Inc. v. United Electrical, Radio & Machine Workers, 2 Cir., 1953, 202 F. 2d 435, and on decisions from other Circuits, including ours in Benton Harbor, in arriving at its holding.

In the Drake Bakeries case, the contract before the court had a provision which gave either party the right to refer the matter to arbitration if a grievance "had not been adjusted in accordance with grievance procedure." The provision read that if a grievance was not adjusted, "then either party shall have the right to refer the matter to arbitration, as provided in Article VI." The Second Circuit arrived at the same conclusion as we here express that grievances to be submitted to arbitration are those that are to be handled in the various steps in the grievance procedure. The court said, "reading the three articles together, we think it clear that the arbitration provided for concerns only questions brought up through the Grievance Procedure." [287 F.2d 157.]

For the foregoing reasons the order of the district court denying defendant's motion for a stay is hereby affirmed.