313 F.2d 231
 JEFFERSON CITY CABINET CO., Plaintiff-Appellant,
v.
INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL-CIO, and Local Union 748 of International Union of Electrical, Radio and Machine Workers, AFL-CIO, Defendants-Appellees.
 No. 14839.
 United States Court of Appeals Sixth Circuit.
 February 4, 1963.
 
 S. J. Milligan, Greeneville, Tenn., and E. Reginald Hancock, Atlanta, Ga. (N. R. Coleman, Jr., Greeneville, Tenn., on the brief; Milligan, Silvers & Coleman, Greeneville, Tenn., of counsel), for appellant.
 David S. Davidson, Washington, D. C. (Benjamin C. Sigal, Washington, D. C., Joe D. Duncan, Richard R. Ford, Knoxville, Tenn., on the brief; Duncan & Ford, Knoxville, Tenn., of counsel), for appellees.
 Before McALLISTER and MILLER, Circuit Judges, and BOYD, District Judge.
 SHACKELFORD MILLER, Jr., Circuit Judge.
 
 
 1
 The plaintiff-appellant, Jefferson City Cabinet Co., filed this action under Section 301 of the Labor Management Relations Act, Section 185, Title 29 United States Code, against the defendants-appellees, an international union and a local labor organization, seeking damages in the amount of $579,300.00 by reason of a violation of the no-strike clause of their collective bargaining contract with the plaintiff. The defendants filed a motion to dismiss the complaint for lack of jurisdiction for the reason that the collective bargaining agreement required plaintiff's complaint to be submitted to arbitration. This motion was later amended so as to seek in the alternative a stay of the proceedings until the arbitration proceedings had been completed, in accordance with the procedure required by the contract. Thereafter, the plaintiff filed a motion for summary judgment supported by affidavits giving the facts leading up to the strike. The defendants in turn filed affidavits in opposition to the motion for summary judgment, supplying additional facts. The factual situation is thus fully presented and does not appear to be in dispute.
 
 
 2
 The District Judge denied the plaintiff's motion for summary judgment and granted the defendants' motion to dismiss, from which ruling this appeal was taken by the plaintiff.
 
 
 3
 The facts giving rise to the controversy are as follows.
 
 
 4
 On February 7, 1961, Clara Cameron, a Chief Steward in the Electronics Division of the plaintiff, who had been absent on authorized sick leave, returned to work and was told there was no work for her that day, but there would be work for her on the following day. At 10 A.M. on the same day the President of the Local inquired as to the Company's position on Clara Cameron. He was told she would have work the next day, to which he replied that if she were not put to work immediately he had been instructed by the International Representative "to pull the plant out." There was some further discussion and difference as to whether a seven-day waiting period, provided in the contract, applied to sick leave as well as to personal leave. The upshot of the dispute was that approximately 200 employees walked out of the plant on the afternoon of February 7, 1961. Pickets were established and the plant shut down completely on the following day.
 
 
 5
 The affidavits filed by the defendants stated that the incident concerning Clara Cameron had no great significance except that it was the culminating incident or grievance of a hundred or so which had been filed with the Company and upon which, because of delays and other obstructions by the Company, no decision could be reached. Efforts had been made by officers of the Local to break the log jam and restore grievance procedure and job classifications without avail. It was asserted that, as a result of these tactics of the Company, the grievance procedure set up in the contract had completely broken down and when the Cameron incident arose the Executive Committee voted to strike.
 
 
 6
 Thus, there is no denial by the parties that there was a strike, which was in violation of the no-strike provision of the bargaining agreement. The issue presented is, Can an action to recover damages for this breach of the bargaining agreement be maintained in the District Court or is it a matter which is required by the bargaining agreement to be submitted to arbitration?
 
 
 7
 It is settled law that a party cannot be required to submit to arbitration any dispute he has not agreed to so submit and that it is for the parties to agree upon which matters or disputes are to be subject to arbitration and which are not to be subject to arbitration. The arbitration provision can be broad or restricted in accordance with the agreement of the parties. In case of disagreement over whether a particular issue between the parties is an arbitrable one under the contract, the Court will construe the contract and determine that question. If it concludes that the issue is an arbitrable one under the agreement of the parties, the Court will require the parties to arbitrate. United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409. If it concludes that the issue is not an arbitrable one under the agreement of the parties, arbitration will not be required and the aggrieved party can attempt to enforce his claim in an appropriate judicial proceeding. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462. It is purely a question of contract construction. Accordingly, in the present case it is for the Court to determine, as a matter of law, whether, under the provisions of the bargaining agreement between the parties, the present claim of the Company for damages for breach of the no-strike provision of the Agreement is or is not an arbitrable one.
 
 
 8
 Articles VII and VIII of the bargaining agreement in the present case provide the controlling provisions in the disposition of this case.
 
 
 9
 Article VII is entitled "Grievance Procedure." Paragraph 1 thereof provides as follows:
 
 
 10
 "1. To adequately provide for the settlement of disputes arising out of the administration of this contract a grievance procedure is hereby provided. Formal grievances must be presented through Union representation as provided in the Grievance Procedure. This does not restrict employees from discussing day to day problems with their foreman or supervisor. Should grievances arise, there shall be no suspension or interruption of work on account of such grievances and a diligent effort shall be made to settle all grievances as soon as possible after they have been presented."
 
 
 11
 Paragraph 2 provides for the first four steps of the Grievance Procedure, — Step 1 being a discussion between the affected employee and the foreman; Step 2 being the presentation of the written grievance to the department foreman; Step 3 being the presentment of the grievance to the Division Superintendent; and Step 4 being the presentment of the grievance to the Plant Manager. Paragraph 5 provides, "Any disputes not settled under the above procedure may then be appealed to the Arbitration Procedure as provided in Article VIII of this Agreement."
 
 Paragraph 8 of Article VII provides:
 
 12
 "The Union agrees that there will not be any strike, slow down, work stoppage, or any other form of action which results in delay, stoppage of work or production during the term of this Agreement. The Company agrees that there will be no lockout during the term of this Agreement."
 
 Paragraph 10 of Article VII provides:
 
 13
 "Any grievance filed by the Company against the Union shall be presented at the fourth step of the Grievance Procedure."
 
 
 14
 Article VIII is entitled "Arbitration." Paragraph 1 thereof provides as follows:
 
 
 15
 "1. A claim that the Company or the Union has violated some provision of this contract or failed to perform some obligation assumed under this contract is an arbitrable grievance within the meaning of this contract. Such grievances which are not disposed of in Step 4 of the grievance procedure as provided in Article VII of this contract shall be submitted to final and binding arbitration under the provisions and procedures of this Article. Claims other than those defined above shall not be deemed arbitrable under this contract."
 
 
 16
 Before considering the no-strike and arbitration provisions in the present bargaining agreement, we will refer to three cases heretofore decided by this Court, upon which the plaintiff chiefly relies. In each of those cases it was held that the breach of a no-strike clause in the bargaining agreement was not an arbitrable issue. Hoover Motor Express Co. v. Teamsters, Chauffeurs, etc., 217 F.2d 49, C.A.6th; International Union, etc. v. Benton Harbor Malleable Industries, 242 F.2d 536, C.A.6th, cert. denied, 355 U.S. 814, 78 S.Ct. 15, 2 L.Ed.2d 31; Vulcan-Cincinnati, Inc. v. United Steelworkers, etc., 289 F.2d 103, C.A.6th. However, it is the contention of the defendants that those cases are not decisive of the present case in that they were decided under the provisions of particular collective bargaining agreements there involved, which were limited in scope and were materially different from the broad provisions in the present case.
 
 
 17
 We agree with the ruling of the District Judge for the reasons stated by him that this point is well taken. In each of those cases, the bargaining agreement there involved, under which arbitration was asked by the union and denied by the employer, set up a grievance procedure for the settlement of grievances, under which arbitration was eventually required if the grievance was not satisfactorily disposed of in other negotiations. The Court held in each case that a breach of the no-strike provision of the bargaining agreement was not a "grievance" within the scope of the grievance procedure, and, accordingly, the provision for arbitration of an unsettled grievance was not applicable. In the Benton Harbor and Vulcan-Cincinnati cases express reference is made to the fact that the grievance procedure dealt only with grievances of the employee against the employer and made no provision for the settlement of a claim or grievance on the part of the employer against the union as was there involved. See 242 F.2d at page 541 and 289 F.2d at page 106. The Supreme Court has recently indicated that the correctness of those decisions is dependent upon the narrowly drawn provisions of the arbitration clauses therein involved. Atkinson v. Sinclair Refining Co., supra, 370 U.S. 238, note 3 on page 242, 82 S.Ct. 1318, on page 1312, 8 L.Ed. 2d 462; Drake Bakeries v. Local 50, American Bakery, etc., Workers, 370 U.S. 254, 264, and note 13 on that page, 82 S. Ct. 1346, 1352, 8 L.Ed.2d 474. See also: Yale & Towne Mfg. Co. v. Local Lodge, etc., 299 F.2d 882, 885, C.A.3rd. As will be seen from the following discussion of the question, the arbitration provision in the present case is a much broader one and is not limited to "grievances."
 
 
 18
 In the Benton Harbor case and the Vulcan-Cincinnati case we also took the position that the no-strike clause was an independent, unequivocal, unconditional obligation on the part of the union; that arbitration of any "difference" or "grievance" that might arise was to be used instead of a strike; that there was no right to strike under any conditions; and, accordingly, the right to strike was not an arbitrable issue under the contract. This interpretation of the bargaining agreement is what has been referred to by the Supreme Court in later cases as the "quid pro quo" theory in a bargaining agreement, namely, that the unconditional no-strike obligation on the part of the union is the consideration given to the employer in exchange for his promise to arbitrate disputes or grievances. Being such, it is not subject to any exceptions, it is not arbitrable. See: United Steelworkers v. American Manufacturing Co., supra, 363 U.S. 564, 567, 80 S.Ct. 1343, 4 L.Ed.2d 1403; Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 455, 77 S.Ct. 912, 1 L.Ed.2d 972. In the Textile Workers case, supra, the Supreme Court in sustaining the enforcement of an arbitration agreement by suit under Section 301 of the Labor Management Relations Act, quoted from Senate Report No. 105, 80th Congress, 1st Session, pages 16-18, to the effect that the chief advantage which an employer could reasonably expect from a collective labor agreement was assurance of uninterrupted operation during the term of the agreement, and that without some effective method of assuring freedom from economic warfare for the term of the agreement, there was little reason why an employer should desire to sign such a contract. It then said: "Plainly, the agreement to arbitrate grievance disputes is the quid pro quo for an agreement not to strike. * * * It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." (Emphasis added.) 353 U.S. pages 453-455, 77 S.Ct. pages 916-917, 1 L.Ed.2d 972.
 
 
 19
 This construction of the contract was in accord with a number of authorities from other circuits which were referred to in the opinions in those cases. Although there were authorities to the contrary (see Yale & Towne Mfg. Co. v. Local Lodge, etc., supra, 299 F.2d 882, C.A. 3rd, where the conflict in the authorities is recognized and discussed, particularly in view of the Supreme Court ruling in United Steelworkers v. Warriors & Gulf Navigation Co., supra, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, and its two companion cases) we were of the opinion that the "quid pro quo" theory was the proper analysis of the problem and carried out the intention of the parties. See dissenting opinion in the Yale & Towne Mfg. Co. case, 299 F.2d at page 885.
 
 
 20
 If that ruling was still in force and effect in this circuit, we would agree with appellant's contention that it was decisive of the issue in this case and would require a reversal of the judgment. But we believe that that analysis and solution of the problem has been recently rejected by the Supreme Court in Drake Bakeries v. Local 50, American Bakery, etc., Workers, supra, 370 U.S. 254, 260-264, note 7 on page 261, 82 S.Ct. 1346, 1350-1352, 1351, 8 L.Ed.2d 474, affirming the judgment of the Court of Appeals, reported at Drake Bakeries v. Local 50, American Bakery, etc., Workers, 294 F. 2d 399, C.A.2nd. The District Judge in making his ruling in this case relied in part upon the ruling of the Court of Appeals in that case before its affirmance by the Supreme Court. We believe that the District Judge correctly held, in view of the ruling in the Drake Bakeries case and the limited scope of the arbitration provisions in the Benton Harbor and Vulcan-Cincinnati cases, that it was not the law that the question of liability for violation of a no-strike provision could not be submitted to arbitration, but that it was a question whether under the provisions of the bargaining agreement in question such an issue was an arbitrable one.
 
 
 21
 Turning now to a construction of the no-strike and arbitration provisions of the bargaining agreement before us, it is, of course, clear that under paragraphs 1 and 8 of Article VII the Union agreed not to strike during the term of the agreement and that should a grievance arise, there would be no suspension or interruption of work and that a diligent effort would be made to settle all "grievances" as soon as possible. Other paragraphs of Article VII provide the way in which grievances were to be settled, including eventual arbitration if not successful otherwise. Under paragraph 10 of Article VII a grievance by the Company was included in this grievance procedure. The Union failed to comply with its obligation not to strike. For the purposes of this opinion it is not for us to decide whether, in view of the Union's contention that the grievance procedure had completely broken down by reason of plaintiff's failure to process grievances, the plaintiff has an enforceable claim for damages. It is sufficient to recognize that undoubtedly it has a claim. As hereinabove pointed out, the question for this Court to decide at the present time is whether this claim is an arbitrable one under the provisions of the bargaining agreement or if it is a claim which is not arbitrable and can, accordingly, be litigated in this judicial proceeding.
 
 
 22
 It is true that the grievance procedure set up by Article VII refers to the settlement of "grievances" by negotiation and arbitration if ultimately necessary. If that was all which was before us for consideration, we might well follow our previous ruling to the effect that the breach of a no-strike obligation is not a "grievance." But Article VII also refers specifically to arbitration of unsettled "disputes" in accordance with the provisions of Article VIII. Unquestionably, there is an unsettled "dispute" between the parties. The present action filed in the District Court is proof of that. United Steelworkers v. American Manufacturing Co., supra, 363 U.S. 564, 569, 80 S.Ct. 1343, 1347, 4 L.Ed.2d 1403. But, irrespective of that, Article VIII defines not only the way in which arbitration is to proceed but also states that certain claims constitute "grievances" which are subject to arbitration. This is the crucial provision in our consideration of this question. It provides in paragraph 1, "A claim that the Company or the Union has violated some provision of this contract or failed to perform some obligation assumed under this contract is an arbitrable grievance within the meaning of this contract." (Emphasis added.)
 
 
 23
 As said in the Drake Bakeries case, 370 U.S. at pages 257-258, 82 S.Ct. at pages 1348-1349, 8 L.Ed.2d 474 with respect to a similar arbitration provision, this is broad language, indeed, which is not restricted to disputes involving questions of interpretation or application of any clause or matter covered by the contract, but includes the arbitration of "all complaints, all disputes and all grievances involving any act of either party, or any conduct of either party, or any relation between the parties, directly or indirectly." The Court said in that case that if the no-strike provision of the contract was so fundamental and so basic to the company as not to be subject to arbitration it was reasonable to expect that it would have been expressly excluded from the comprehensive language of the arbitration provision, if the parties so intended. Such also is the teaching of United Steelworkers v. Warrior & Gulf Navigation Co., supra, 363 U.S. 574, 582-585, 80 S.Ct. 1347, 1352-1354, 4 L.Ed.2d 1409.
 
 
 24
 We have considered other contentions of the appellant, which we find to be without merit.
 
 
 25
 We are of the opinion that under the authority of the Drake Bakeries case, supra, and the Warrior & Gulf Navigation Co. case, supra, the judgment should be affirmed.
 
 
 26
 It is so ordered.