INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, and its affiliated Local Union No. 6, Plaintiffs,

v.

SAGA FOODS, INC., et al., Defendants.

No. 74 C 3656.

United States District Court, N. D. Illinois, E. D.

Feb. 12, 1976.

Irving M. Friedman, of Katz & Friedman, Chicago, Ill., for plaintiffs.

Robert E. Cronin, Paul Hanzlik, Chicago, Ill., for Harding. and Saga Foods.

William S. McKay, Jr., Isham, Lincoln & Beale, Chicago, Ill., Richard L. Davis, Labor Relations Dept., Menlo Park, Cal., for Harding-Williams. Corp.

Lawrence I. Kipperman, Chester J. Maciorowski and James Whitehead, of Sidley & Austin, Chicago, Ill., for Canteen Corp.

## MEMORANDUM OPINION

WILL, District Judge.

This opinion disposes of cross-motions for summary judgment brought by the plaintiff union and defendant Canteen Corporation. The issue presented is whether Canteen Corporation, the successor to Saga Foods, Inc. as cafeteria operator at the International Harvester plant in Melrose Park, must comply with an arbitration award rendered against its predecessor, Saga Foods.

Following competitive bidding for the food services operation at International Harvester, Canteen was awarded the contract. It took over the operation on July 7, 1975 and at that time assumed the collective bargaining agreement between Saga Foods Corporation and plaintiff.

Julio Rossi was discharged by Saga Foods on June 8, 1974. The discharge became the subject of a grievance which was submitted to arbitration before Arbitrator George K. Fleishli. The Arbitrator conducted a hearing on August 23, 1974. On October 16, 1974, he issued an award finding that Rossi had been improperly discharged and should be reinstated to his position with full seniority and made whole for any loss of earnings. On June 26, 1975, the Arbitrator made a supplemental award finding. that Rossi should be restored to his former position at Saga Foods. The plaintiff seeks enforcement of the Arbitrator's Award against the defendants as well as costs and reasonable attorney's fees.

Canteen's motion for summary judgment is based on the following contentions: 1) because Canteen neither had notice of the outstanding arbitration award nor succeeded Saga Foods pursuant to a contractual relationship, the balance of equities in the instant case requires that Canteen not be held accountable for the Rossi arbitration award; 2) whether Canteen, in assuming the collective bargaining agreement between Saga Foods and the union, also assumed the outstanding arbitration award against Saga Foods is a matter of contract interpretation which should be remanded to the Arbitrator.

The union contends, in opposition to Canteen's motion and in support of its motion, that: 1) Canteen. had notice of the arbitration award; 2) another arbitration would be a useless act, since an arbitrator has already ordered Rossi reinstated to the bargaining unit; 3) since, in the agreement of July 7, 1975, Canteen agreed to continue the preexisting

contract between the union and Saga Foods, it is bound by the Arbitrator's ruling under the contract and the Court must enforce the award. In response, Canteen contends that: 1) if the Court decides it has power to interpret the contract, issues of material fact exist as to whether the parties intended the substitution language to operate retroactively or only *in futuro*, and Canteen had knowledge of the arbitration award; 2) the Court should not order Canteen to do an impossible task, and since International Harvester has refused to permit Rossi to come on the premises, it would be impossible to reinstate him to his former position.

Canteen has submitted an affidavit by Mr. Madda, its staff Vice President and Director of Labor Relations, asserting that it had no knowledge or notice of the grievance filed by Rossi, or the decisions of the Arbitrator, or the Court proceedings to enforce the award. The union has submitted a competing affidavit from its International Representative on the staff of Region 4, who asserts that he informed Canteen's Vice President of the arbitration award prior to July 7, 1975.

The issue may be stated as follows. Where a successor service contractor expressly accepts the preexisting contract between its predecessor and the union, does it thereby accept an outstanding arbitration award, or is the acceptance of the award a matter of contract interpretation, which should be left to an arbitrator?

### Enforcement of The Arbitration Award

Citing language in *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) and the clear congressional policy in favor of the enforcement of agreements to arbitrate grievance disputes emphasized in *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), Canteen contends that the question of whether the Rossi arbitration award is enforceable against it is a matter of contract interpretation which must be submitted to arbitration.

*American Manufacturing Co., supra*, was the first of three consecutively decided Supreme Court decisions known as the "Steelworkers Trilogy" in which Justice Douglas enunciated the view that final adjustment by a method agreed upon by the parties is the desirable method for settlement of grievance disputes arising over the interpretation of an existing collective bargaining agreement.[1] The Court explained:

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment and all that it connotes that was bargained for. 363 U.S. at 567–568, 80 S.Ct. at 1346.

Since the Trilogy, courts have consistently enforced arbitration awards and refused to adjudicate matters of contract interpretation except in cases where the arbitration provision of the collective bargaining agreement did not cover the matter in dispute. See *International U. of E., R. & M. Wkrs. v. General Electric Co.*, 407 F.2d 253 (2nd Cir. 1969); *Sinclair Refining Company v. Atkinson*, 290 F.2d 312 (7th Cir. 1961); *Vulcan-Cincinnati, Inc. v. United Steelworkers of America*, 289 F.2d 103 (6th Cir. 1961); *Cook v. Gristede Bros.*, 359 F.Supp. 906 (S.D.N.Y.1973).

---

1. The remaining cases of the Trilogy are *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

In the instant case, the union has opposed Canteen's motion for summary judgment and moved for summary judgment enforcing the outstanding arbitration awards made under the collective bargaining agreement. As noted earlier, Canteen maintains that whether the arbitration awards made under the agreement when its predecessor, Saga Foods, was a party should be enforced against it is a matter for arbitration. We disagree.

The arbitration provision of the contract, Art. III, § 2, in question reads as follows:

The grievance and arbitration procedure set forth herein shall be applied to the settlement of controversies between the Company and the Union (or between the Company and an employee or group of employees covered by this Agreement), and relating to any of the following: 1) any matter involving the interpretation of any provision of this Agreement; or 2) any matter involving the violation of any provision of this Agreement. Disputes as to working conditions not covered by this Agreement shall be subject to collective bargaining between the Company and the Union. The Company and the Union will make every effort to settle any differences as to such matters through the orderly processes of collective bargaining.

Step 4 of the grievance procedure provides for a "final and binding" decision by an arbitrator. There is no dispute by either party that the Rossi discharge was a matter of contract interpretation properly submitted to the arbitrator; hence, the arbitration award is properly enforceable.

On the other hand, there exists nowhere in the basic contract any provision concerning the enforcement of outstanding arbitration awards against successor employers. Rather, that question arises only under the July 7, 1975 Agreement between the union and Canteen Corporation. In pertinent part that agreement reads:

2. Canteen Corporation assumes, and will recognize and maintain in effect in accordance with their provisions, and for their provided terms, the collective bargaining (and related benefit) agreements formerly between Saga Foods Corporation, and the UAW and its Local 6 for the employees and former employees of the bargaining unit at the Melrose Park Plant, of the International Harvester Corporation; is substituted as a party for Saga Foods Corporation in these Agreements.

■ The July 7, 1975 agreement does not provide for the submission to arbitration of disputes involving the interpretation of that agreement. We hold, therefore, that because the matters currently in dispute are not within the ambit of the arbitration provision of the collective bargaining agreement and because the July 7, 1975 agreement does not provide for the arbitration of any disputes arising thereunder, the Steelworkers Trilogy and its progeny do not require arbitration of the instant dispute. Accordingly, absent circumstances preventing their enforcement, the awards in the instant case must be enforced.

### The Successor Employer

■ The agreement of July 7, 1975 between the union and Canteen Corporation expressly provides for the assumption by Canteen of the Collective Bargaining Agreement between the union and Saga Foods. Pursuant to the modern trend in labor law cases, which reflects a policy of protecting employees from sudden shifts in ownership of employment facilities, Canteen's expressed assumption of the contract, plus its notice of the existence of the outstanding arbitration award, if such notice existed, would form a sufficient basis for the conclusion that Canteen assumed the liability of Saga Foods for the reinstatement of Julio Rossi, determined by the Fleishli arbitration awards of October 16, 1974 and June 26, 1975. See Doppelt,

*Successor Companies: The NLRB Limits The Options—And Raises Some Problems,* 20 DePaul L.Rev. 176 (1971) and Goldberg, *The Labor Law Obligations of A Successor Employer,* 63 Nw.U.L.Rev. 735 (1969).

Canteen cites several cases including *Perma Vinyl Corp.,* 164 NLRB No. 119, 65 LRRM 1168, enforced sub nom. *United States Pipe & Foundry Co. v. NLRB,* 398 F.2d 544 (5th Cir. 1968); *NLRB v. Burns International Security Services, Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *Golden State Bottling Co., Inc. v. NLRB,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); and *Textile Workers v. Cast Optics Corp.,* 464 F.2d 577 (3rd Cir. 1972) for its position that, absent specific agreement to the contrary, Canteen should not be required to satisfy the Rossi arbitration award. Those cases, it contends, establish the requirement that the new employer must both have purchased the business from the predecessor and have had notice of the potential arbitration award before it will be required to comply with such an award. Canteen concludes that, since it obtained the food services contract from Harvester after competitive bidding and since it knew nothing of the arbitration award (a question disputed by the affidavits), it should not be exposed to liability for the enforcement of the award.

### Purchase Requirement

■ Although the successor's purchase of the predecessor's business is a recurring fact in cases where the successor has been held to assume liability for the outstanding unfair labor practices of the predecessor, the language of the decisions does not indicate it is a prerequisite to finding such liability. In *United States Pipe & Foundry Co., supra,* United States Pipe had purchased the assets including the manufacturing facilities of Perma Vinyl while unfair labor practice proceedings were pending against Perma Vinyl. Subsequent to the purchase, the NLRB ordered reinstatement of four employees who had been discharged by Perma Vinyl. While not contesting the merits of the Board's decision, United States Pipe challenged the Board's order charging it with remedying the unfair labor practice. The Court explained that the national labor policy requires that the right of owners to rearrange their businesses be balanced by some protection of the employees from a sudden change in the employment relationship. In affirming the Board's authority to enter the order against United States Pipe, the Court said (p. 548):

> The order simply seeks to effectuate the policy and purposes of the Act to the end of protecting the employees in question. We conclude that the Board had the power under § 10(c), based on the circumstances obtaining, to require United States Pipe to reinstate the employees involved. Only United States Pipe can reinstate the employees; it took the plant with notice that the employees were claiming their jobs; the jobs still exist; the exigencies of the situation are such that the policy of protecting the employees can only be afforded by United States Pipe. The Board has properly balanced the equities.

In *Burns, supra,* the Supreme Court found that the national labor policy required that a successor who employed the majority of the predecessor's employees who had selected a bargaining representative, had a duty to bargain with that representative, although it had no duty to accept the substantive terms of the contract between the predecessor and the union. The latter conclusion was based on the fact that the successor had neither expressly nor impliedly agreed to the previous collective bargaining contract, and since the Act forbids the Board from imposing contractual terms on an employer, 29 U.S.C. § 158(d), it could not force Burns to accept such terms.

The *Burns* Court distinguished *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1967), where a successor corporation was required to arbitrate with a union representing employees of the predeces-

sor merged corporation, on the ground that in *Wiley* there was no comparable national policy against forcing an employer to arbitrate. On the contrary, the Court continued, arbitration was preferable as a matter of national labor policy to tests of strength between labor and management. Hence, in *Burns*, the absence of an acquisition of assets went only to the question of whether the successor employer could be deemed to have agreed to the collective bargaining agreement. The following language is illustrative (406 U.S. p. 286, 92 S.Ct. p. 1581):

> Here there was no merger or sale of assets, and there were no dealings whatsoever between Wackenhut and Burns. On the contrary, they were competitors for the same work, each bidding for the service contract at Lockheed. Burns ·purchased nothing from Wackenhut and became liable for none of its financial obligations. Burns merely hired enough of Wackenhut's employees to require it to bargain with the union as commanded by § 8(a)(5) and § 9(a). But this consideration is a wholly insufficient basis for implying either in fact or in law that Burns had agreed or must be held to have agreed to honor Wackenhut's collective-bargaining contract.

In *Golden State Bottling Co., supra,* the successor bought the predecessor's business after the Board had ordered the predecessor "its officers, agents, successors, and assigns" to reinstate an employee whose discharge had been found to constitute an unfair labor practice. The Board found that, although the successor was a bona fide purchaser, it purchased with knowledge of the outstanding Board order and continued after the acquisition to carry on the business without interruption or substantial change in the method of operation, employees or supervising personnel and was, therefore, a successor under the Act. The Ninth Circuit affirmed the Board order.

In affirming the Ninth Circuit, the Supreme Court held that 1) the successor was in privity with the predecessor for the purposes of Rule 65(d) of the Federal Rules of Civil Procedure, because it acquired the employing enterprise with the knowledge of the outstanding order of reinstatement, and 2) the Board's remedial power under 29 U.S.C. § 160(c) included the broad discretion to fashion such an order against the successor. In its reasoning, the Court adopted the same policy of providing protection for employees from sudden changes in the employment relationship reflected in *Wiley* as well as *Burns*, while recognizing that every successor would not be required to accept all orders of the Board, an example being a case where the successor does not hire a majority of the predecessor's employees.

The Court also recognized the need to balance the equities in such a case by finding that the policy of the Act would be best served and at a minimal cost to the successor. The successor's failure to remedy the predecessor's labor policies regarding unfair labor practices, particularly employee discharges, could be perceived by employees as a continuation of the predecessor's labor policies and, consequently, lead to labor unrest or a leadership void in cases where substantially all the predecessor's assets and employees had been taken over and no substantial interruption in the business operations had occurred. The Court also noted that no congressional policy prevented the granting of relief as it had in *Burns*.

In *Cast Optics Corp., supra,* the Third Circuit affirmed the District Court's enforcement of an arbitration award against the successor corporation on the grounds that the successor purchased substantially all the assets of the predecessor, the successor continued essentially the same operation, plant and employees, and there was evidence that the change in ownership was a scheme to avoid the consequences of an unfavorable decision of the NLRB or arbitration proceedings. The District Court order was, presumably, tantamount to forcing the successor to assume, at least in part, the substantive provisions of the contract. Cf. *John Wiley & Sons, supra.*

The employer challenged the District Court ruling relying on *Burns, supra.* In denying that challenge, the Third Circuit cited the *Burns* language quoted earlier herein and distinguished the case before it as follows:

> In the instant case, however, the successor corporation, Cast Optics Corporation of Delaware, purchased substantially all the assets of Cast Optics Corporation of New Jersey on January 5, 1970, during the pendency of these proceedings, . . . plant operations continued at the same location, the principals of the two corporations were identical, and there is substantial support for the district court's conclusion that "the change in ownership from the New Jersey corporation to the Delaware corporation was a deceptive scheme entered into by the principals in interest of Cast Optics Corporation in order to avoid the consequences of an unfavorable decision in either the National Labor Relations Board or arbitration proceedings."

The recurring prerequisite in the foregoing cases for holding a successor liable for outstanding awards, whether for unfair labor practices or violations of the contract, is the continuity of business operations by the successor in substantially the same form as the predecessor, and without significant interruption. The method of acquisition of the predecessor's business is not emphasized nor held to be a pivotal factor. In *Burns* where, as in the instant case, the successor acquired the service contract through competitive bidding, while no seller-purchaser relationship existed between the predecessor and successor, the decisive issue was whether Burns expressly or impliedly assumed the contract between the union and the predecessor. In the instant case, not only was the contract between Saga Foods and the union expressly assumed but there appears to be virtually complete continuity of the food services operation at International, notwithstanding the change of operators. Under these circumstances, plaintiff is not required to show that Canteen purchased the business from Saga. The absence of this fact, therefore, does not preclude the granting of summary judgment.

### Notice

■ The notice requirement poses a different problem. The cases decided under the National Labor Relations Act consistently require that the successor must have had notice before liability can be imposed. See *Golden State Bottling Co. v. NLRB, supra.* In *Perma Vinyl Corp., supra*, the decision in which the Board shifted its policy from one of refusing to enforce orders against successors except in cases of disguised continuation of a business operation to that of enforcing such orders in cases of substantial continuity, the Board said the following:

> . . . we are persuaded that one who acquires and operates a business of an employer found guilty of unfair labor practices in basically unchanged form under circumstances which charge him with *notice* of unfair labor practice charges against his predecessor should be held responsible for remedying his predecessor's unlawful conduct. (emphasis supplied) 164 N.L.R.B. at 969.

Similarly, in *United States Pipe and Foundry Co., supra*, as pointed out in our earlier discussion, a crucial factor in finding liability was that United States Pipe "took the plant with notice that the employees were claiming their jobs." Considerations of fairness require that the successor have notice of outstanding obligations under the contract before being required to assume those obligations. This requirement is not satisfied by Canteen's expressed assumption of the collective bargaining agreement in the instant case.

■ Regarding notice to Canteen, Mr. Shier asserts in his affidavit supporting the union's brief:

> Prior to July 7, 1975, I was in negotiations with Canteen Corporation regarding the matter of the collective

bargaining agreement that we had with Saga Foods, Inc. In the course of the negotiations with Canteen, I informed Mr. Carl Madda and a Mr. Nowakowski, who represented Canteen Corporation, that we had an arbitration award which required reinstatement of Julio Rossi to his job in the cafeteria, and that we would expect Canteen Corporation to honor this award as well as Saga Foods, Inc. Neither Mr. Madda or Mr. Nowakowski made any reply to this statement as far as I can recall.

Mr. Madda of Canteen, on the other hand, asserts in his affidavit supporting Canteen's brief:

Prior to July 7, 1975, Canteen had no knowledge and was given no notice of the grievance filed by Julio Rossi against Saga Foods, Inc., or of either of the decisions of the arbitrator or of any of the court proceedings to enforce the arbitrator's award. During the negotiations which led to the agreement effective July 7, 1975, in which Canteen agreed to recognize the United Auto Workers and to accept the collective bargaining agreement between Saga Foods, Inc. and the U.A.W., Canteen was never informed by the union or any of its representatives of the existence of this grievance, the decisions of the arbitrator or of the pending court proceedings.

Since the parties, in competing affidavits, dispute the issue of whether Canteen had notice of the Rossi awards, summary judgment enforcing these awards must be denied.

We reject Canteen's contention that "reinstatement is an impossible act" since International Harvester has refused to permit the reinstatement of Rossi. International Harvester is a party to this suit and, therefore, subject to the orders of this Court. In the event that the award is ordered to be enforced, International Harvester would obviously be obliged to comply.

An order consistent with the foregoing will enter.